Commonwealth ex rel. Carpenter *v.* Carpenter
et al., Appellants.

Argued December 15, 1958. Before RHODES, P. J.,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS,
JJ. (HIRT, J., absent).

*Bruce E. Cooper,* for appellants.

*Francis B. Haas, Jr.,* with him *McNees, Wallace & Nurick,* for appellee.

OPINION BY WATKINS, J., April 16, 1959:

This is a habeas corpus action in the Court of Common Pleas of Dauphin County, brought by Jean S. Carpenter, relator appellee, against her husband, Robert B. Carpenter, and his father and mother, Ray Luther Carpenter and Hilda Mae Carpenter, respondent appellants, to determine the custody of her minor children, Debra Louise Carpenter, and Harold Allen Carpenter. The court below awarded custody to the mother, and the father and paternal grandparents instituted this appeal.

Jean S. Carpenter and Robert B. Carpenter, each, at the time of the hearing, 24 years of age, were married June 28, 1953. Debra Louise was born in February, 1954; Harold Allen in the last week of July, 1956.

After their marriage the parties went to live with his parents on a farm near Hummelstown, Pennsylvania. In October, 1954, they moved to Lawn, Lebanon County, Pennsylvania where they stayed until March, 1955. At that time they moved to Hershey, Pennsylvania to live with the maternal grandmother, Mrs. Marion Springer. It was while living here that Harold Allen was born. The husband left his wife and children and returned to his parents before his new son was a week old. They never resumed marital relations. The mother and children lived together at Union Deposit, Pennsylvania and Hershey, Pennsylvania until January, 1958 when she went to a hospital for an operation. Her mother-in-law offered to keep the children. In May of 1958 she took the children from the Carpenter farm and placed them in the home of an

aunt in Philadelphia. She was then planning to secure employment in Philadelphia. Robert B. Carpenter and his parents went to the Philadelphia home and forcibly returned the children to the farm. This habeas corpus action followed.

We believe that the principles of law, in this type of case, are well settled and those principles are well stated by Judge HERMAN of the court below: "Ordinarily, the needs of a child of tender years are best served by the mother, who is better able to care for them, Hixon's Appeal, supra; and as said in Commonwealth ex rel. George v. George, 167 Pa. Superior Ct. 563 (1950), at page 566: 'Unless compelling reasons appear to the contrary, a child of tender years should be committed to the care and custody of its mother. Com ex rel. Keller v. Keller, 90 Pa. Superior Ct. 357; Com. ex rel. Gates v. Gates, supra, 161 Pa. Superior Ct. 423, 55 A. 2d 562; Com. ex rel. Graham v. Graham, 167 Pa. Superior Ct. 470, 75 A. 2d 614. This is true although others who have been suitable custodians of the child have become attached to it. Com. ex rel. Miller v. Barclay, 96 Pa. Superior Ct. 315; Com. ex rel. Lamberson v. Batyko, 157 Pa. Superior Ct. 389, 43 A. 2d 364.' Nor, as was said in Commonwealth ex rel. Chumard v. Chumard, 168 Pa. Superior Ct. 188 (1951), should a mother be deprived of the custody of her child of tender years merely because she is compelled to work for a living." See also: *Com. ex rel. Haller v. Hanna*, 168 Pa. Superior Ct. 217, 77 A. 2d 750 (1951).

However, we recognize that "It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being." *Com. ex rel. McNamee v. Jackson*, 183 Pa. 522, 525, 132 A. 2d 396 (1957). Such de-

termination could supply the compelling reasons to overcome the principles usually applied.

We are discussing a contest between a mother on the one side and paternal grandparents on the other, because, although the father is one of the respondent appellants, he is presently in the army and cannot be with his children no matter in whom the custody is placed. It should be noted that he failed to support them entirely until his entry into the army which resulted in a government allotment for their support. The fact that he left his wife with a newly born son less than one week old, and his baby girl two years old, certainly must have influenced the judgment of the court below.

We are inclined to give great weight to the findings of Judge HERMAN of the court below who had the opportunity of seeing and hearing the parties and the witnesses and is in a much better position to pass upon their ability and character than we are in examining the cold record. *Galloway v. Galloway et ux.*, 188 Pa. Superior Ct. 313, 146 A. 2d 383 (1958).

The court below had this to say concerning the father: "Robert B. Carpenter, the father of the children, is presently in the Army and cannot be with his children no matter in whom their custody is placed, but it is interesting to note from his testimony that when he gets 'home' from military camp on weekends (it is significant that 'home' to him is not with his wife or children but with his parents), he doesn't see his children because they are then with their mother. His testimony indicates that he made no effort to go to his wife's apartment where they were, although it is only a few miles away. He admits that he was indifferent to his son at first, but says that now that has changed.

"We have searched diligently through his testimony for some indication that he had the normal parental love and devotion for his children that would in our opinion be required if their welfare were to be promoted by custody in him, and we have failed to find it. When asked about his plans for the future with regard to his children, he replied that he wanted to 'Get out of the Army as soon as possible and move home and stay with my parents and children'.

"Instead of testifying in any respect as to the care they would receive with him and his parents, Robert B. Carpenter is content to cast aspersions on his wife and her care of the children, by saying that he didn't think she was as good as she should have been because 'she didn't like to change diapers too much'."

As to the mother, he finds that, "Jean Carpenter will be employed in the office of Hershey Chocolate Corporation from 8:00 a.m. to 5:00 p.m., Tuesday to Friday, and from 7:00 a.m. to 5:00 p.m., Monday, but will not work Saturday or Sunday. She will be with her children when not working, will lunch with them every day, and during the time she is away at work, Mrs. Losch will care for them. Not the slightest word was said against Jean's morals, her ability to raise her children, nor her love for them. Indeed, she appeared to the court to be a fine, intelligent, upstanding woman, well able to take care of her children, and greatly attached to them."

And further as to the grandparents, "Ray Luther Carpenter and Hilda Mae Carpenter, the paternal grandparents of the children, and the other respondents here, appear to be good, hardworking people who no doubt love their grandchildren and who have in the past and would continue to care for them to the best of their ability, but their age and physical condition would not permit them to give the care that a natural

mother could give, and their farm home leaves many things to be desired."

After a careful study of this record we agree with the court below that the best interest and permanent welfare of these very young children demand that custody be awarded to their mother, Jean S. Carpenter.

Order affirmed.