## Commonwealth ex rel. Saenz v. Saenz

*William L. Goldman*, for relatrix.

*Alfred F. Shea*, for respondent.

BIESTER, P. J., June 7, 1963.—In this proceeding relatrix, the mother of Raymond John Saenz, usually referred to in the testimony as "Ricky", born October 19, 1952, seeks the custody of the child, who is now living with his father and paternal grandparents.

Almost all of the testimony is devoted to attacks and counterattacks of the parties seeking to demonstrate that the other is unfit to have the child in custody. Unfortunately for the boy, much of the criticism each directs towards the other appears to be justified. In addition, the deep-seated ill feeling each of the parties has for the other has brought about a situation in which the interests of the child have been subordinated and he has become the unwilling victim of the mutually vindictive attitude of the parents.

The parties were married on May 12, 1951, and lived together until September of 1961. For sometime before they separated their life together was one of continual bickering, quarrelling, name-calling and antagonism. Even after the separation of the parties the unpleasantness has continued to exist, largely because they live only a few doors apart.

Relatrix is a high school graduate and has also taken business courses at night school and studied music at the Philadelphia Conservatory of Music. As of the time of the hearings, she was a part-time secretary for a school district and also gave organ lessons. Her father is choir master and band master for the Salvation Army in Philadelphia and she herself is extremely interested in music. Ricky has been receiving music lessons from his mother since the age of four and, according to the testimony, considering his age, is an accomplished organist.

We see no occasion to treat specifically and at length with her recriminations, as if this were a divorce action between the parties, but her accusations included insulting references by her husband to her physical

appearance; his solicitation to commit unnatural sex acts; the use of foul and indecent language in general, and particularly profane and abusive language directed to his wife, some times in the presence of the boy; over-indulgence of the child; threats and minor physical assaults.

On July 17, 1961, she states that Mr. Saenz threatened to kill her and threw stones at her car, as the result of which she had him arrested. Immediately after the arrest Ricky left his parents' home and went to live with his paternal grandparents where he is still living and where he was later joined by his father. Not only does relatrix contend that her husband is unfit to have custody of the boy, but justly complains of the general environment of the home of the paternal grandparents, especially the contention, well established by the record, and particularly by a tape recording of a part of a conversation, that the child's paternal grandfather uses foul, vulgar and indecent language. Although respondent denies the accusations made by his wife, we are inclined to accept her testimony as to the name-calling and the throwing of rocks and stones at the relatrix' automobile.

Mr. Saenz is an employe of a railroad company earning approximately $110 a week. Apparently he is regularly employed and, insofar as the record discloses, a sober, industrious man with a limited education. He attributes the breakdown of the marriage to his wife's conduct with a Mr. Marucci. Ricky has manifested great interest in racing a midget automobile, which his father purchased for him. When these races took place Mrs. Saenz took her own car to them, and many times sat with Marucci over the objection of her husband. She admitted that she would meet Marucci at various places after the races, and her husband contends that she stayed out quite late on a number of these occasions. He also says that his wife constantly compared

him unfavorably with Marucci. On one occasion Mrs. Saenz was bringing Ricky from a race and met Marucci along the highway. Marucci and Mrs. Saenz then drove their respective automobiles off the highway near a railroad station, Mrs. Saenz leaving her automobile and joining Marucci in his. Ricky remained in his mother's automobile pending her return to her car.

Whether her conduct with Marucci triggered the separation is difficult to definitely determine, but an examination of the record leads one to the inescapable conclusion that the relationship between relatrix and Marucci is subject to severe criticism. She admitted that she was "fond" of Marucci and it is significant that she did not call him as a witness, although he accompanied her to one or more of the hearings.

In addition, and probably of more serious import from the child's viewpoint and welfare, is her attitude toward the boy. She is apparently convinced that she can compel Ricky to respect and love her by chastising him, which, rather than accomplishing the result she seeks, has led to a serious estrangement of the mother and child. The following incidents are illustrative.

While the parties were living together various sums of money were deposited in a joint account in the names of the boy and his mother as a reserve fund for music lessons. The mother used this fund, which then approximated $230, for the purpose of purchasing an automobile. Prior to the hearings Mrs. Saenz replaced the money in the account. Evidently respondent, to his discredit, advised the boy of his mother's having used the money for the purchase of an automobile and the boy then charged his mother with converting his money to her own use. When this occurred Mrs. Saenz struck her boy and he then called her a pig. She thereupon chased the boy across the field toward a woodland with a part of a branch of a tree. The father testified that this was not an isolated situation and that relatrix

frequently struck the boy with considerable severity without justification.

On December 23, 1961, the boy brought a Christmas present to his mother, but refused to enter the house when she invited him to do so. She thereupon took the gift and threw it on the lawn, later tossing it on the porch of the grandparents' home.

Ricky testified that on May 13, 1962, between hearings, his mother struck him severely and knocked off a part of a tooth, the chastisement arising out of the boy's resentment of his mother's accusations against his grandfather. She admitted the striking, but denied the severity thereof.

The legal principles which govern proceedings such as this are well established, the difficult problem in each case being the application of the principles to the case at hand. There can be no doubt that the primary consideration governing us in such matters is the best interest and welfare of the child, including physical, intellectual, moral and spiritual well-being: Commonwealth ex rel. Graham v. Graham, 367 Pa. 553; Commonwealth ex rel. Carpenter v. Carpenter, 189 Pa. Superior Ct. 297; Commonwealth ex rel. Mann v. Mann, 181 Pa. Superior Ct. 438; Commonwealth ex rel. Schofield v. Schofield, 173 Pa. Superior Ct. 631. Further, the mother has the prima facie right to the custody of children of tender years: Commonwealth ex rel. Maines v. McCandless, 175 Pa. Superior Ct. 157; Commonwealth ex rel. Gates v. Gates, 161 Pa. Superior Ct. 423; Urbani v. Bates, 395 Pa. 187; Commonwealth ex rel. Horton v. Burke, 190 Pa. Superior Ct. 392. Assuming that the wish of the child as to his custody is based on substantial factors, we are justified in taking it into consideration: Commonwealth ex rel. McDonald v. McDonald, 183 Pa. Superior Ct. 411; Commonwealth ex rel. Shamenek v. Allen, 179 Pa. Superior Ct. 169. Al-

though the child in this case may be considered of tender years, as children grow older less weight may be given to the tender years doctrine and more weight given to the preference of the child. See Commonwealth ex rel. Bender v. Bender, 197 Pa. Superior Ct. 397, 401.

In the matter now before us, Ricky is adamant in his desire to remain with his father and advances, as amongst his reasons, his mother's relationship with Marucci, the throwing of his Christmas gift upon the lawn, and the undeserved beatings which the boy alleges his mother administered.

Although neither of the homes presents an ideal atmosphere for the raising of this child, we are convinced that the resentment which the boy bears toward his mother at this time is such that the best interest of all of the parties, including relatrix herself, would not be well served by directing that the boy move from his father's and paternal grandparents home to that of his mother. We appreciate that in many cases of this kind the parents use the child as a tool, or prize in a tug of war for the subject's custody, but, whether or not respondents have nurtured the animosity of the child toward the mother, we are convinced that the conduct of relatrix has been well designed to create the atmosphere of hostility which presently exists.

It is obviously desirable that the schism between relatrix and her son be mended and it is far from our thinking that relatrix be deprived of contact with Ricky and the opportunity to recover a harmonious relationship with the child. We prefer, however, not to make a definitive order in this respect with the hope that arrangements for visitation and temporary custody may be amicably arranged with the help of counsel. If no agreement can be arrived at, a further hear-

504

ing will be held for the purpose of determining the rights of temporary custody and visitation.

*Order*

And now, to wit, June 7, 1963, the custody of Raymond John Saenz is awarded to his father, Raymond William Saenz, until the further order of the court, subject to the rights of visitation and temporary custody of the child's mother, Elizabeth Jane Saenz.