Opinion by
Hoffman, J.,
This is an appeal from the Order of the Family Division of the Court of Common Pleas of Philadelphia County denying appellant’s writ of habeas corpus seeking custody of two children presently living with ap *593 pellees, Salvatore Cirillo, their natural father, and Julia Cirillo, the paternal grandmother.
The two children, Salvatore, age six, and Melody, age five, were horn as a result of a meretricious relationship which began in 1965 between appellant, Edna Rain ford and appellee, Salvatore Cirillo, both of whom were married at the time. By her previous marriage, appellant had three children whom she gave up for adoption. The relationship between the parties ended in January of 1970, when appellant left the natural father and the two children and moved to New York.
In September of 1970 appellant, a white woman, married Osborne C. Rain lord, a black man. They presently reside in a three-bedroom home in the Bronx, New York. Mr. Rainford, a divorcee, is a building contractor and earns approximately fourteen thousand dollars a year.
Since the departure of the appellant, the children have been in the custody of their natural father, residing in South Philadelphia at the six-room home of the paternal grandparents, Julia Cirillo, age fifty-one and her husband, Salvatore. The father is manager of a tire department at a local automobile dealership and earns approximately $8600.00 per year. The grandmother cooks and cares for the children while the father works during the day. The father’s work schedule is such that he can spend considerable time with his children. Both appellees expressed deep affection for the children and a strong desire that custody be awarded to them for the welfare of the children. Mrs. Cirillo stated that her family is a very close one and that the children have become more open since living in her home.
Appellant stated that she left Philadelphia in January of 1970 solely for the purpose of obtaining immediate medical care in New York, care which she stated she was financially unable to obtain in Philadelphia. *594 This was contradicted by the fact that she never sought medical care in New York until March of that year, and that appellee provided Blue Cross and Blue Shield for her, which appellant had used during two previous hospitalizations. In addition, Mr. Bainford testified that appellant’s stated reason for leaving Philadelphia was that she “was disgusted in the way she was living.”
Appellant testified that when she left Philadelphia it was with the knowledge and approval of appellee who drove her to the bus station. This is flatly contradicted by appellee who stated that he came home from lunch and found the children left alone in the house. He stated that this trip to New York was without his knowledge and without any explanation. This testimony was substantially corroborated by the paternal grandmother. The trial judge accepted the testimony of appellee and his witnesses in regard to this matter.
Appellant had taken frequent trips to New York previously, “whenever she needed money”. These trips were normally for weekends, one for over a week and another for a month. Her activity on these trips was unexplained.
After leaving Philadelphia, appellant never attempted to visit the children until the institution of these proceedings on December 29, 1970. She stated that she called the father several times but was rebuffed. She also stated that she purchased Christmas presents for the children but made no effort to deliver them because she “figured” the children would never get them. The trial judge, in evaluating the credibility of these assertions, disbelieved appellant. Appellee stated that appellant’s only communications with him were for the purpose of obtaining money.
The medical treatment received by appellant in New York consisted of three weeks of hospitalization for gynecological problems and weakness in March, a thera *595 peutic abortion in August, and an emergency D. and C. in November, all in 1970. The abortion was performed after a June diagnosis of pregnancy which indicated an eight to ten-week period of gestation, placing conception sometime in April. Appellant, however, testified that she became pregnant before leaving Mr. Cirillo. She then hesitated in naming the putative father until she could “check up the days in the record for how many months and what happened.”
Her various visits to New York and her stay in New York after leaving Philadelphia are clouded with mystery. At one point she stated that she was financed by a girl friend, worked as a cook, and as a dancer, and that she was on welfare but never received any payments. While she testified that she lived wtih a friend prior to her marriage to Mr. Rainford, she, at one point, admitted, and other evidence indicated, that she resided with Mr. Rainford for an appreciable period of time prior to their marriage.
Miss Diane Cirillo, cousin of appellee, testified in regard to the condition of the home and the children while the parties lived together. She testified that she often visited their home and that appellant “hollered at [the children] a lot, and everything she said to them was in a high tone of voice,” that the children appeared nervous, were afraid of appellant, seems closer to the father, and, that after appellant left, seemed much happier and less fearful. She also testified that the house was generally in a state of disorder. This testimony was substantially corroborated by the paternal grandmother who observed that, at the time the children first came to live with her, they seemed nervous and withdrawn, but that after a while, they became more cheerful and open. There was also testimony indicating that one of the children suffered from a nervous condition while appellant still lived in Philadelphia, but that it disa *596 peared after her departure. Mrs. Cirillo also testified that while the parties were living together, Mrs. Rain-ford would not do the shopping and that she (Mrs. Cirillo) had to do it for her.
It is clear, as the lower court indicated, that except for the mother’s present promise to care for and love the children, appellant’s case rested entirely on the “tender years” presumption. This rebuttable presumption, however, is merely another way of saying that the interests and well being of a child are normally best served in the care and custody of the natural mother. Commonwealth ex rel. Logue v. Logue, 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960). In all child custody cases, however, the welfare and best interests of the child predominate. Commonwealth ex rel. Ruczynski v. Ruczynski, 421 Pa. 2, 219 A. 2d 460 (1966). Thus, the mother’s right to custody is not absolute and the tender years presumption can be carried only so far as the circumstances require, Commonwealth ex rel. Buell v. Buell, 186 Pa. Superior Ct. 468, 142 A. 2d 338 (1958), and all other considerations including the respective rights of the parents are subordinate to the child’s well being. Commonwealth ex rel. Staunton v. Austin, 209 Pa. Superior Ct. 187, 223 A. 2d 892 (1966). Thus, where compelling reasons to the contrary exist, custody should not be granted to the mother. Commonwealth ex rel. Buell v. Buell, supra. Such compelling reasons may be found in actions and conduct of the mother that affect the physical, spiritual, emotional, or moral well being of the children. Commonwealth ex rel. Carpenter v. Carpenter, 189 Pa. Superior Ct. 297, 150 A. 2d 724 (1959).
In this case, the trial judge commented several times on the credibility and attitude of the appellant. This was reflected in his evaluation of the appellant’s concern for the welfare of her children prior to, and *597 after her permanent departure to New York. The trial judge apparently considered this departure and appellant’s previous unexplained trips to New York to be evidence of studied neglect and lack of concern for the welfare of her children. This evidence of appellant’s lack of concern was entitled to considerable weight, given the sudden and unexplained nature of her departure. The circumstance of appellant’s pregnancy and subsequent abortion were noted by the hearing judge as raising serious questions in regard to appellant’s forthrightness and honesty.
With this evidence of the appellant’s lack of concern, the lower court found “compelling reasons for continuing custody in the natural father. We are of the opinion that the mother is unstable. We believe that the mother does not possess the qualifications, disposition, or ability to guide the future of these children and that her past indifference and irresponsibility are indications of what to expect in the future. We find that the mother is not a fit person to promote the welfare and best interest of these children.”
Of equal significance is the uncontradicted testimony of several witnesess in regard to the substantial improvement in the emotional and physical condition of the children after appellant’s departure. The hearing judge was favorably impressed with this evidence, in his own words “of the good experience of the children in the father’s custody.”
With this in mind, we have recognized that the trial judge is in a position to evaluate the attitudes, sincerity, credibility, and demeanor of the witnesses. Because we are not in such a position, we have recognized that a trial judge’s determination of custody should be accorded great weight. Commonwealth ex rel. Nevins v. Wells, 222 Pa. Superior Ct. 98, 292 A. 2d 515 (1972) (concurring opinion). Only where we are constrained *598 to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge. Commonwealth ex rel. Thomas v. Gillard, 203 Pa. Superior Ct. 95, 198 A. 2d 377 (1964). In light of the evidence presented in this case, we cannot say that the lower court abused its discretion in awarding custody to the appellees.*
The order of the lower court is, therefore, affirmed.

A careful and independent reading of the record and the lower court opinion shows that the determination of custody was not based on any consideration of the race of appellant’s spouse. Rather, the denial of custody in this case is supported by considerations totally independent of any racial factors. Compare Commonwealth ew rel. Lucas v. Kreiseher, 221 Pa. Superior Ct. 196, 289 A. 2d 202 (1972) (dissenting opinion).