428 A.2d 567

COMMONWEALTH of Pennsylvania, ex rel. BARBARA M.

v.

JOSEPH M.

Appeal of BARBARA M.

Superior Court of Pennsylvania.

Argued Dec. 5, 1979.

Filed April 3, 1981.

---

Elisabeth Petry, Philadelphia, for appellant.

John J. D'Angelo, Philadelphia, submitted a brief on behalf of appellee.

Before PRICE, WATKINS and HOFFMAN, JJ.

54

PRICE, Judge:

Appellant, Barbara M. and appellee, Joseph M. the natural parents of Demian and Molly M.,[1] were married on August 8, 1970, separated on March 17, 1976, and divorced on January 4, 1978. The couple's two children resided with their parents until their separation in March, 1976. Thereafter, both children remained in appellant's custody until August, 1977, when appellee failed to return Demian to his mother following a visit with his grandparents.[2] Although appellant sought to employ self-help methods to regain custody of Demian, she was unsuccessful. She thus filed a petition seeking lawful custody of her son on October 19, 1977. The petition was denied and this appeal followed.

Appellant contends that the trial court erred in (1) according excessive weight to Demian's expressed preference to remain with his father; and (2) separating Demian and his sister since there was no compelling reason to do so. In addition, appellant argues that the order granting custody to appellee is not in Demian's best interest because she can provide Demian with (1) medical care which he does not now receive; and (2) a living environment that is far more stable than that in which he currently resides. For the reasons that follow, we disagree with these contentions and thus affirm the order of the trial court.

It is axiomatic that the singular concern in a custody proceeding is the best interest and welfare of the children involved. *See Wenger v. Wenger*, 267 Pa.Super. 134, 406 A.2d 555 (1979). To ensure that proper attention is addressed to this concern, we are obligated to exercise the broadest scope of review on a custody matter that is before

1. At the time of the hearing in this matter Demian was 7 and Molly was 5 years of age.

2. Appellant was in the process of moving to another apartment during the month of August, 1977. To facilitate the move, appellant took the children to her in-laws' residence on August 19, 1977. Appellee visited the children during their stay with their grandparents and, upon his departure, was accompanied by Demian. Demian has remained in his father's custody since that time, while Molly continues to reside with her mother.

us on appeal. *Commonwealth ex rel. Drum v. Drum*, 263 Pa.Super. 248, 251, 397 A.2d 1192, 1193 (1979). Nonetheless, since the trial judge is in the best position to evaluate the attitudes, sincerity, credibility, and demeanor of the witnesses involved, his "determination of custody should be accorded great weight." *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 597–98, 296 A.2d 838, 841 (1972) (citation omitted). *See e. g., Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Zeedick v. Zeedick*, 213 Pa.Super. 114, 117, 245 A.2d 663, 665 (1968). Thus, although we are not duty bound to accept the trial court's determination, we will defer to it, absent an abuse of discretion, if the facts have been thoroughly investigated by the judge, that investigation is documented by a complete record, and a comprehensive analysis of the judge's findings is contained in a written opinion. *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. at 597–98, 296 A.2d at 841. *See Commonwealth ex rel. Schwarz v. Schwarz*, 252 Pa.Super. 95, 380 A.2d 1299 (1977). Instantly, the trial judge has complied with this formula and thus deference to his determination is warranted.

The facts adduced through the course of the several hearings held in this matter are neither complicated nor disputed. Prior to their separation and consequent divorce, appellant and appellee not surprisingly shared the same lifestyle. Both parties strictly adhered to a macrobiotic diet consisting of whole grains, locally grown vegetables, various soups, beans, noncitrus fruits, nuts, juices, and herbal teas. Dairy food, meat and sugar were excluded from their diet. (N.T. 27, Feb. 9, 1978). In addition, appellant and appellee slept on the floor in a Japanese futon, a device similar to a sleeping bag, allegedly because of its therapeutic benefits. (N.T. 16, Feb. 9, 1978). Since their divorce, appellant no longer abides by the macrobiotic diet or the "futon" sleeping custom. Appellee and Demian, however, continue to practice both.

Appellant is unemployed and has no present plans to seek employment. Her time is thus divided between caring for

her daughter Molly and attending the Delaware County Community College on a part-time basis. While appellant attends class, Molly attends a day care center located on the college campus. Welfare, federal housing assistance, and an allowance from her parents provide appellant's sole means of support.

A one-time apprentice barber, appellee's work record is slightly more impressive. Although he was unemployed for the balance of the period in which Demian was in his custody prior to the court's order herein, appellee had secured a job as an interior painter with a construction company as of the date of the most recent hearing below. Appellee testified that a caretaker would be available for Demian if one was needed as a result of his new work hours. This position would allegedly be filled by a couple with whom appellee and Demian are familiar and with whom they share the same lifestyle. (N.T. 28, July 12, 1978). Appellee also received at least a partial welfare grant as a supplement to his unsteady income.

Appellant's home consists of a three bedroom, air conditioned apartment with two baths, a balcony, and the right to use a swimming pool and playground situated in the apartment complex. In contrast, appellee has only a small, two room apartment located in center city Philadelphia. (N.T. 31, Feb. 9, 1978). Nonetheless, believing as we do, that material things are, relatively speaking, less important to a child of seven than love, friendship and stability, we must agree with the trial judge's conclusion that "the parties are equally capable of caring for ... Damien [sic: Demian]." Docket Entry, March 1, 1978. Accordingly, our inquiry must focus on the singular concern in such cases, namely, the manner in which Demian's best interest and welfare may be served.[3]

3. Although the fitness of the parent is an important factor in a determination of the best interest of a child, a finding that both parents are equally fit is not equivalent to a finding that the best interest of the child would be equally served with either parent.... *[A] father can be awarded custody even though both parents are 'found to be fit and proper,' as long as the child's welfare would be*

■ Appellant initially argues that the order awarding custody to appellee is not in Demian's best interest since Demian will allegedly be deprived of proper medical attention if permitted to remain in appellee's care. This contention is without merit.

During her testimony and in her brief, appellant intimates that appellee disapproves of doctors and dentists and, therefore, that Demian's health would be in jeopardy should appellee be permitted to retain custody. The record, however, fails to support this contention. During one of the hearings, for example, appellee stated, "[I]f you are not eating towards bad teeth, the cavities, you won't get them. If you are limiting the sugars and candies and other junk food kids nowadays eat they won't tend toward getting cavities." (N.T. 28, Feb. 9, 1978). Appellee's statement expresses confidence in the diet which he follows and its ability to ward off some of the ill effects of modern life. Such an expression hardly amounts to a blanket disapproval of modern medical science.[4]

■ Any suggestion that appellee would provide inadequate care for Demian and thus place his health in jeopardy necessarily casts aspersions on the care which Demian received in appellee's home prior to the court ordered custody arrangement. However, any such suggestion directly contradicts the answers which appellant provided in discussing this same matter with the trial judge. The pertinent exchange is as follows:

> best served by such a disposition . . . . A father need not prove that the mother is unfit in order to obtain an award of custody.
> Commonwealth ex rel. Cutler v. Cutler, 246 Pa.Super. 82, 85–86, 369 A.2d 821, 822 (1977) (citations omitted) (emphasis added).

4. Appellant not only argues that appellee does not believe in doctors and dentists but also that, because of these beliefs, appellee denied his son needed medical attention. Brief for Appellant at 7–8. Although we realize that an advocate must represent his client zealously, such representation, however zealous, can only be based upon record evidence. On this record, there is no foundation upon which appellant could suggest that appellee allowed the condition of his son's inner ear to worsen or that he in any other way subjugated his son's needs to his personal beliefs and practices.

Q. [THE COURT]: To pursue what Mr. D'Angelo has already asked you, what have been your observations of your son Demian physically?

A. [Appellant]: He's fine.

Q. Does he appear to be in good health?

A. Yes, he does.

Q. And does he appear to be well-cared for or cared for adequately?

A. Yes, he does.

Q. And he makes no complaints to you?

A. No.

Q. And do you have any complaints about his welfare or the way he is being cared for?

A. No, I just think he really misses his sister.

(N.T. 16–17, July 12, 1978).[5]

Appellant also argues that the trial court's custody decree ignores Demian's best interest because she could provide Demian with a homelife that is far more stable than the one which he will enjoy if he remains in his father's custody. In support of her contention on this issue, appellant cites (1) three occasions on which appellee allegedly took Demian to Philadelphia "nightclubs;" (2) the material advantages of residing in a three bedroom apartment as compared with the material disadvantages of living in a two room center city apartment; (3) the fact that appellee allegedly neglected both Demian and Molly financially following the parties' divorce; (4) appellee's poor employment record; and (5) appellee's adherence to the macrobiotic diet. After carefully

5. Appellee's admitted disbelief in immunization is not an indication of parental unfitness since, by legislative fiat, some discretion has been reposed in parents to determine whether to immunize their children. *See* Act of March 10, 1949, P.L. 30, No. 14, art. XIII, § 1303, 24 P.S. § 13–1303(a). Since the state has a duty to protect the child's best interest and welfare, moreover, an application for modification of custodial rights may always be entertained. *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973). Thus, if, at some future date, appellee's beliefs do pose a threat to Demian's physical well being, a petition for a change of custody would be entertained. Presently, however, the record which we have reviewed gives us no reason to believe Demian's health is in danger and we refuse to hypothesize such a reason.

considering the record and briefs in this case, we cannot accept this argument.

Regarding appellant's "nightclub" argument, the record discloses that appellee and Demian went to a particular "night spot" on two occasions to hear the performance of a musical group which they both enjoy. (N.T. 34, Feb. 9, 1978). On another occasion, they apparently dined in a restaurant housed above a cafe in the same building. The record reveals nothing out of the ordinary about these three experiences except that, on one such excursion, Demian was permitted to violate the Macrobiotic diet by drinking orange juice since that was the only drink available for a patron of Demian's age. Admittedly, there was testimony that one of these excursions occurred on a schoolnight. Since the record establishes that Demian was home by 10:00 p. m. or shortly thereafter, however, we cannot say that an isolated instance in which a child enjoys a late evening evinces parental unfitness. To the contrary, we are impressed that appellee and his son have the ability to share mutual recreational interests, a fact of considerable importance in resolving a custody dispute.

Appellant's attempt to buttress her "stability" argument by comparing the relative differences between her apartment and appellee's apartment is likewise unavailing. Appellant's ability to offer Demian a three bedroom apartment, pool and playground in no way reflects *her ability* to provide that environment at some future date, since that future is contingent upon her receipt of government assistance at its present financial level. In any event, the relative difference between the two residences is not controlling. Demian has friends with whom he can play at both locations. Although the record reveals that certain types of recreation, *e. g.*, swimming, may be more readily available at his mother's apartment, his father testified that Demian already receives ample recreation in a safe and wholesome environment. Having been enrolled in a school near his father's apartment, the change necessitated by a move to his mother's apartment could only have a disruptive effect. Finally,

since there was no evidence that appellee's apartment was unclean or in any other way ill-suited to sheltering a child, its smaller size will not defeat appellee's right to custody.[6]

■ Appellant's "stability argument" also contains an allegation that appellee financially neglected his children following their divorce. If this is a factually correct statement,[7] appellee's conduct is to be reprobated and condemned since the obligation to support one's children is absolute and thus not contingent upon the parent having custody of the child. *See Kaplan v. Kaplan*, 236 Pa.Super. 26, 344 A.2d 578 (1975).

■ Nonetheless, the determination of custody and the disposition of support matters are distinct concerns. *Commonwealth ex rel. Posnansky v. Posnansky*, 210 Pa.Super. 280, 232 A.2d 73 (1967). While support orders are largely within the sound discretion of the trial judge, *Commonwealth ex rel. Bergwerk v. Bergwerk*, 228 Pa.Super. 190, 192, 323 A.2d 243, 245 (1974), custody determinations are subject to close scrutiny by an appellate court. *Commonwealth ex rel. Drum v. Drum*, 263 Pa.Super. 248, 397 A.2d

**6.** Even if material wealth was controlling, we would not reach a contrary conclusion. In this regard, we note appellant's attempt to depict appellee as an uneducated, unemployed individual ill-suited to the role of a custodial parent. *See* Brief for Appellant at 9. Appellee's employment record is, admittedly, less impressive than we hope it will be in the future. Nonetheless, appellee has worked and, during periods of unemployment, has at least made the effort to seek employment. We thus find ironic, appellant's attempt to use her "voluntary unemployment" as a positive factor in this dispute. While we commend appellant for her drive and ambition in attending college, we cannot ignore that appellant's sole support is government assistance and that she has never even attempted to find work. Nor is caring for her children a factor mitigating against her employment, since she readily admitted using a day care center for Molly while she herself was in class. In resolving this dispute, therefore, we are not faced with a clear choice between positive and negative records of achievement. We thus must ignore the bitterness between the parties and attempt to correctly interpret the record in the decision as to the best available custodian.

**7.** This was not a support case. Accordingly, the record does not contain sufficient evidence from which we could determine the validity of appellant's contention.

1192. This is true, in part, because custody matters admit of little flexibility since the best interests of the child *must* be controlling. Support orders, on the other hand, must be justified by the parent's present earning ability and thus necessarily require room for judicial flexibility. *See Commonwealth ex rel. Goodman v. Delara*, 219 Pa.Super. 449, 281 A.2d 751 (1971).

Mindful of these differences as well as the distinct policies sought to be furthered by support orders and custody decrees, we have reviewed the docket entries herein and are satisfied that the trial judge has monitored the matter of support very closely. We note that the trial judge has carefully reviewed appellee's employment record and has used the threat of contempt proceedings to ensure appellee's fulfillment of his support obligations.

 Although custody determinations are not to be used to punish a recalcitrant parent or to vindicate the court's authority, this is not to say that such conduct could not have been considered as a factor bearing on appellee's parental fitness. It should be noted, however, that *each parent* is obligated to contribute to the support of his or her children to the extent of their respective financial abilities to do so. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975). Thus, absent the opportunity to review a record from a full and complete support hearing, one in which the financial status of, and support paid by, *each of the parties* was disclosed, we cannot hold that the trial judge erred in determining that appellee's conduct, *vis a vis* appellant's conduct in this matter, did not militate against awarding him custody of Demian.[8]

8. The fifth prong of appellant's stability argument deals with appellee's dietary habits. We are not persuaded that the stability issue is in anyway affected by appellee's adherence to the macrobiotic diet. Tastes vary. Thus, we are not prepared to dictate the types of food people may or may not eat. Appellant was herself an adherent of the macrobiotic diet prior to her divorce from appellee. Moreover, since appellant herself offered to feed Demian in a manner consistent with his diet should she be granted custody, we fail to see what difference appellee's adherence to the diet could possibly make.

Appellant next contends that the trial judge erred in according excessive weight to Demian's preference to remain in the custody of appellee. We disagree.

The trial judge met in chambers with Demian. Counsel were present, and together with the court, had an opportunity to question Demian during the recorded interview. *See Cheppa v. Cheppa*, 246 Pa.Super. 149, 151, 369 A.2d 854, 856 (1977). During the course of this interview, Demian testified that he liked living with his father, (N.T. 57, Feb. 9, 1978), that he would prefer to continue to do so "[b]ecause he feeds me better and takes care of me better," *Id.* at 58–59, and that he was nonetheless desirous to continue to *visit* his mother. *Id.* at 65.

It is indeed unfortunate that a child must ever be placed in a position of expressing a preference for one or the other parent. Since a custody court's decision has such far reaching consequences, however, it is important for the court to at least attempt to determine, as best it can, the child's perspective. That is precisely what the trial judge sought to do in the instant case. The judge thus discussed with Demian the divorce that resulted in the custody dispute, the fact that both of his parents loved him and that they would continue to do so regardless of the outcome of this dispute. Despite his youth, Demian appeared to understand the problems involved as well as the ramifications inherent in their solution. Indeed, Demian's perceptiveness so impressed the judge that he felt compelled to conclude that Demian was quite mature for his age. Slip op. at 3. In any event, the judge did not simply offer Demian a choice and defer to the decision reached by the seven year old child. Rather, in reaching his decision herein, the judge

considered all the facts and circumstances in this case and
... conclude[d] that the parties are equally capable of caring for ... Damien. However, because of Damien's intense preference to live with his father, *together with the fact that he appears to be satisfied and well cared for*

*and is settled in school I deem it not in his best interest and welfare to interrupt his life at this time.*

Docket Entry, March 1, 1978 (emphasis added).

Our conclusion on this issue is buttressed by the factors considered by the court upon *reconsideration* of the original order dated March 1, 1978. Some of these factors are reflected in the court's order of July 26, 1978, which order continued custody in appellee.

We find that since our Order of March 1, 1978 awarding custody of child Damien to his father, Joseph M., the child's condition has not deteriorated but instead has improved in that his *school attendance* and *grades have improved* as well as his *general appearance* and *attitude*; that despite his father's employment we are satisfied and convinced that *Damien will be adequately cared for by his paternal grandmother and father's friends.* We are again impressed by the child's desire to continue to live with his father and there was no evidence presented that should prevent this.

In regard to Damien's mother we find that there are no changes in her condition or circumstances sufficient to warrant a change of custody to her. *She is still a full time student* and *receiving public assistance.* We have considered Damien's desire to be with his sister Molly who is residing with her mother and believe that *Damien can enjoy her company and companionship during the visitation periods the time and duration of which have been under the control of the parties.*

Therefore, having reconsidered the matter in the light of present conditions and circumstances and found that it would be in the best interest and welfare of Damien to remain in the custody of his father, the order of March 1, 1978 is affirmed.

Order of Court, July 26, 1978 (emphasis added).

Appellant's final contention is that the trial court erred in separating Demian from his sister Molly since there was no compelling reason to do so. Again, we disagree.

We are cognizant of the fact that the most natural and, in many cases, best disposition for a child such as Demian would be to have him remain in the custody of both parents thus preserving the family unit. In a case such as the one *sub judice*, however, such a disposition is impossible since the family unit was dissolved by the actions of one or both of the parties. Faced with such a situation, a custody court must strive to place the child in the best *available* environment. Instantly, we feel that that has been done.

This is not to say that we no longer view as compelling the need to keep siblings together if possible. Instantly, however, Molly was placed in her mother's custody by the Court of Common Pleas of Delaware County. That decision evidences that court's perception of Molly's best interests based upon facts and circumstances as they existed on or about December 15, 1977. We were not called upon to review that court's disposition and thus have no way of knowing the basis for that decision. To place Demian in the custody of appellant solely on the basis of a desire to keep siblings together would be to abdicate our responsibility to carefully review custody cases, since we would necessarily be obliged to blindly accept the disposition which placed Molly in the custody of her mother. This we will not do. We do have a complete record in the matter before us, on the other hand and, having reviewed the basis for that decision, are quite satisfied that it supports the court's decision therein.[9]

For all of the foregoing reasons, the order granting custody of Demian to appellee is affirmed.

WATKINS and HOFFMAN, JJ., concur in the result.

**9.** We note that, although visiting one another could never be quite as satisfying to Molly and Demian as growing up together in the same home, they will have the opportunity to visit each other rather frequently. Indeed, since the number and length of visitation periods have been left to the discretion of the parties, much of appellant's concern over the children's separation may be unnecessary.