442 A.2d 791

**COMMONWEALTH ex rel. Gaynelle MONTGOMERY, now known as Gaynelle Duda, Appellant,**

v.

**Ray A. MONTGOMERY.**

Superior Court of Pennsylvania.

Submitted Oct. 28, 1981.

Filed March 12, 1982.

Sanford S. Finder, Washington, for appellant.

Janet Moschetta, Washington, for appellee.

Before SPAETH, HESTER and WATKINS, JJ.

HESTER, Judge:

Presently before the court is appellant's appeal from the order [1] of the lower court dated November 12, 1980, wherein the lower court granted general custody of the parties' three minor sons to appellee father.

[1] "ORDER

AND NOW, this 12th day of November, 1980, it is ORDERED, ADJUDGED AND DECREED that custody of the three minor children shall and is hereby granted in favor of their natural father, Ray A. Montgomery, with reasonable visitation rights in the natural mother as heretofore established. The petition of the natural mother for custody is hereby dismissed.

Thomas J. Terputac, Judge"

The record herein consists in excess of 500 pages of testimony clearly evidencing a situation which we are asked to resolve in numerous cases; that is, to decide which of two loving, caring parents should be awarded general custody of the parties' minor children.

The lower court convened six separate hearings: October 11, 1979, November 27, 1979, February 13, 1980, March 18, 1980, August 13, 1980 [2] and September 29, 1980, following which the court issued a 25-page Opinion and Order dated November 12, 1980 granting custody of the three minor children to their natural father, the appellee herein. It is from this Order that the instant appeal has been taken.

We affirm.

It is undisputed that our paramount concern in a child custody proceeding is to determine what is in the best interest and welfare of the child involved considering his or her spiritual, emotional, physical and intellectual well-being. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972); *Sipe v. Shaffer,* 263 Pa.Super. 27, 396 A.2d 1359 (1979); *Lewis v. Lewis,* 267 Pa.Super. 235, 406 A.2d 781 (1979); *Wenger v. Wenger,* 267 Pa.Super. 134, 406 A.2d 555 (1979); *In re Jennifer Lynn Arnold,* 286 Pa.Super. 171, 428 A.2d 627 (1981). In a contest between the child's parents, both mother and father bear the affirmative burden of proving that an award of custody to them would be in the best interests of the child. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977).

As this court aptly stated in *Lewis v. Lewis,* supra, at 783–4:

**2.** Following the March 18, 1980 hearing, the record was closed. Before the lower court issued its order, however, appellant in July of 1980, petitioned the court alleging a change of circumstances sufficient to justify the reopening of the record. By Order dated July 28, 1980, the petition was granted and the lower court interviewed the three minor children *in camera* on August 13, 1980. Thereafter, by still another order dated August 28, 1980, the court pursuant to another petition, reopened the record yet another time and took additional testimony on September 29, 1980.

In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett,* 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions of the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer,* supra, *Scarlett v. Scarlett,* supra. In conducting this review the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. See *Sipe v. Shaffer,* supra; *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. See *Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. See *Valentino v. Valentino,* 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter,* supra. Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino,* supra.

■ Additionally, and assuming that the lower court has fully discharged its responsibilities to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself, and then and only then, file a comprehensive opinion containing its findings of fact and conclusions of law, we thereafter adopt the reasoning of Judge Price contained in *Commonwealth ex rel. E. H. T. v. R. E. T.,* 285 Pa.Super. 444, 448, 427 A.2d 1370, 1372 (1981), that:

"... since the trial judge is in the best position to evaluate the attitudes, sincerity, credibility, and demeanor of the witnesses involved, his 'determination of custody

should be accorded great weight.' *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 597–98, 296 A.2d 838, 841 (1972) (citation omitted). See, e.g., *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1973); *Commonwealth ex rel. Zeedick v. Zeedick*, 213 Pa.Super. 114, 117, 245 A.2d 663, 665 (1968). Thus, although we are not duty bound to accept the trial court's determination, we will defer to it, absent an abuse of discretion, if the judge has thoroughly investigated the facts, that investigation is documented by a complete record, and a comprehensive analysis of the judge's findings is contained in a written opinion. *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. at 597–98, 296 A.2d at 841. See *Commonwealth ex rel. Schwarz v. Schwarz*, 252 Pa.Super. 95, 380 A.2d 1299 (1977). . . . ''

■ We have engaged in a comprehensive review of this voluminous record and have made our own independent judgment based upon our careful review of the evidence. In discharging this duty, we are satisfied that all relevant facts and circumstances have been fully explored and developed by the parties and where necessary, by the lower court.

With these responsibilities as our guideposts, we have concluded that the lower court has made a penetrating and comprehensive inquiry in order to develop a complete record. In support thereof, the lower court has filed a detailed Opinion consisting of 25 pages, replete with numerous Findings of Fact, a detailed review of the applicable law, and the reasoning behind its Conclusions.

The record discloses that the parties were married on September 1, 1961, and that three sons were born of the marriage; Mark, on December 16, 1967; Douglas, on July 9, 1971; and Greg, on April 10, 1973. At the time of the first hearing, the appellant was 36 years old and the appellee, 41. In 1966, the parties built a three-bedroom home at 41 Willow Drive, in Washington, Pennsylvania, where they resided together with their three minor children until their first separation in August of 1978. At that time, the appellant removed himself and the boys and stayed nearby with his

parents for approximately one week. At the end of that one week separation, he returned the boys to their mother at the Willow Drive property. For approximately the next five to eight weeks (depending upon whose recollection one accepts), the three boys resided at the Willow Drive property with the appellant while the appellee stayed at his parents' home. However, during this period the appellee had a three-week vacation from work and therefor was able to spend the majority of his time during the day with his sons while sleeping at his parents' home.

On September 13, 1978, the appellee moved back into the marital residence after allegedly finding appellant's present husband (Alex Duda) in the living room at four o'clock that same morning. The parties resided at Willow Drive (although not living as husband and wife) until April of 1979, at which time the appellant moved to a two-bedroom townhouse like structure known as Carriage Hill in McMurray, Pennsylvania. She moved by herself; the three boys stayed in the Willow Drive home with their father, the appellee.

The parties were divorced by Decree dated April 25, 1979. Previous thereto, the appellant wrote a letter (Exhibit 1-A) dated February 26, 1979, which provided: "Ray, I promise to give you custody of the boys if you don't contest this divorce. (Signed) Gay" (R. 78a).

The appellant married Alex Duda on June 16, 1979. The appellee married Mary Montgomery on July 18, 1979. Following appellee's remarriage, Mary Montgomery and her two minor sons by a previous marriage moved into the Willow Drive residence with the appellee and his three sons.

From that point in time until the issuance of a Visitation Order, dated October 11, 1979, the appellant did not see her three sons on a regular basis, although she did speak to them often by telephone. In July of 1979, the appellant filed the instant Petition for Writ of *Habeas Corpus*. As previously noted, there were six hearings pursuant thereto, the first one being held on October 11, 1979. Following the hearing on October 11, 1979, the court issued the visitation order referred to above.

We have carefully reviewed the voluminous record before us and concur with the ultimate finding of the lower court that, on balance, the best interests of the parties' three minor sons will best be served if they remain in the general custody of their father, the appellee herein.

We agree with the lower court that both parents are fit and proper persons to care for, and have general custody of, their three boys. Both appellant mother and appellee father have demonstrated their love and *present* commitment to the welfare of their children; for example, see appellant's sincere statements of her love and commitment contained at R. 42–43a, 45a and 58a; similarly, see appellee's statement at R. 236a.

Additionally, the record supports the lower court's findings that there were numerous factors which did not favor an award in favor of either party for the reason that those factors were substantially equal. They included:

(a) *The preferences of the boys* : In this regard, each of the three boys had two *in camera* interviews and at no time did any of them express a *strong* preference;

(b) *The residences of both parties* : Based upon the court ordered Children and Youth Social Agency caseworker testimony;

(c) *The financial status of each family* (appellant and Alex Duda and appellee and Mary Montgomery) was properly determined to be comparable;

(d) *A positive attitude by the parties' respective new spouses* : Both Alex Duda and Mary Montgomery demonstrated a very positive willingness to care for the three boys in the event that general custody was awarded to their spouse;

(e) *Involvement with the boys' activities* : Both nuclear families spend as much time as is available with the children and are involved with the children's extra-curricular activities such as basketball, swimming, baseball, etc.;

(f) *Religious influence* : Prior to the onset of domestic problems in 1978–79, the appellant repeatedly took the boys

to church; thereafter while in the custody of the appellee and Mary Montgomery, all five boys (his three, her two) attended church services and church-related activities;

(g) *Other witnesses* : Each of the parties had numerous witnesses testify in their behalf. Notwithstanding their obvious biases, each of the witnesses spoke with a sincerity and an apparent forthrightness.

In sum, we concur with the lower court that both parties and their present spouses are fit and proper to have custody of the boys, and both sets of spouses have presently created an equally positive and favorable environment to raise the boys.

We feel required at this time to comment on the letter which appellant wrote during the parties' divorce litigation in February of 1979 which promised custody of the boys to the appellee if he would not contest the divorce. We feel that this letter in and of itself has no probative value and thus has no bearing on the ultimate decision of what is in the best interest and welfare of the children at this time. However, we are compelled to note that *many months* lapsed between the February letter and appellant's action (actually inaction) to obtain custody of her children or, at least, to have them on extended overnight visits. We feel that this lapse of time is significant.

We are also most impressed by the commitment which the appellee and his present wife, Mary Montgomery, have made towards the individual maturation of Mark, Douglas and Greg—emotionally, scholastically, morally and socially. In addition, it appears from the record that Mary Montgomery's two sons by her prior marriage, Russell and Christopher, get along well and form a family unit with Mark, Douglas and Greg. "They get along basically fairly well. They fight like any brothers do. There is no more fighting between the two sets of brothers than there is between all of them." (R. 246a).

"Q. What are your feelings about Ray's three sons?

A. I love them very much . . . .

A. I love them and I think that they have returned that love." (R. 259a).

Mary Montgomery also convinced the court that the social life which she and Ray enjoy is primarily centered around the boys' activities.

Previously we have touched upon those factors which we feel have been "too close to call" in favoring either of the parties. However, there are certain factors which convince us that the best interests of the three minor boys will best be served if their general custody remains with their father. They include:

(a) That the boys have, in fact, resided continuously with their father in a stable and loving relationship during a very stressful period;

(b) Appellee's *total* commitment to his sons during that stressful and trying period (1978–79), whereby he *clearly* placed the welfare and well-being of his three sons far above his own; whereas the record does not demonstrate the same degree of commitment on the part of the appellant; and finally,

(c) At the present, the boys' academic, emotional, moral and physical welfare is better served and more highly promoted by an award in favor of the appellee.

In this very close and difficult case for all parties concerned, we, after carefully reviewing the entire record, and after discharging our responsibilities as previously detailed, concur with the lower court that the best interests of the parties' three minor children will better be served by awarding general custody of them to their father, the appellee herein.

Order affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

I concur in the majority's conclusion that the order of the lower court should be affirmed. I am unable to join the

majority's opinion because of its announced premise that whenever the lower court has thoroughly investigated the facts and filed a comprehensive opinion, we "will defer to it[s] [determination], absent an abuse of discretion." At 793–794. This is an inaccurate statement, and is contrary to settled authority that we are bound to follow.

It is of course true that we must not nullify the lower court's fact-finding function. Thus we must defer to its resolution of issues of credibility. But from the facts as found by the lower court we must draw our own inferences, and then decide for ourselves what is in the best interests of the children. As stated by our Supreme Court in *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 296, 426 A.2d 555, 557 (1981):

> Our scope of review in a custody matter is of the broadest type, and we are not bound by deductions or inferences made by the trial court. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 295, 368 A.2d 635, 637 (1977). We must exercise an independent judgment based on the evidence and make such order on the merits as right and justice dictate. *Adoption of Farabelli*, 460 Pa. 423, 433, 333 A.2d 846, 851 (1975); *Snellgrose Adoption Case*, 432 Pa. 158, 163, 247 A.2d 596, 599 (1968).

*Accord, Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980). *And see Commonwealth ex rel. Berman v. Berman*, 289 Pa.Superior Ct. 91, 432 A.2d 1066 (1981).

Having undertaken such a review of the record here, I have concluded that the order of the lower court should be affirmed. The decisive factor for me is that since the parties' separation, the children have lived with their father. "There can be no question that stability is important to a child's welfare." *In re Custody of Hernandez*, 249 Pa.Superior Ct. 274, 296, 376 A.2d 648, 660 (1977). Stability is not *all* important, *id.; and see Commonwealth ex rel. Grimes v. Yack*, 289 Pa.Superior Ct. 495, 433 A.2d 1363 (1981). But here, where so many other factors are equal, I find it decisive.