Commonwealth ex rel. Galloway, Appellant, *v.* Galloway.

314

Argued November 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Zeno Fritz,* with him *Edward J. Blatt,* for appellant.

*Paul B. Greiner,* for appellees.

OPINION BY WATKINS, J., December 9, 1958:

This is an appeal by Mildred M. Insogna, the appellant, mother of the minors, from the order of the Court of Common Pleas of Elk County, awarding custody of the minor children, Regina Galloway, age 7, and James Galloway, age 5, to the appellees, Harold Galloway, the paternal uncle, and Jeanne P. Galloway, his wife.

Charles Galloway and Mildred Galloway, now Insogna, were married December 10, 1939. Regina was born December 6, 1950 and James, April 4, 1952. Two older children, Robert was born on May 19, 1941 and Dolores on August 20, 1942. It was a stormy marriage and they separated in 1944. The two youngest children were left with the appellees and have been with them ever since. The older children were left with another paternal uncle and presently Dolores is living with her mother and Robert with his father.

In July, 1955 the parents were divorced and the same month, July 21, 1955, the appellant married Domenic Insogna. A child, Patricia Ann, was born of this marriage and at the time of the hearing was fifteen months old. Charles Galloway has not remarried.

The appellant had lived at 6707 Hamilton Avenue, Pittsburgh, Pennsylvania. Shortly before the hearing the Insognas rented and moved into a house having six rooms, three of which are bedrooms and a bath, located at 1108 South Braddock Avenue, Swissdale, Pennsylvania. Appellant, her husband, their infant daughter and her daughter occupy the premises. The appellees own their own home on South Street, a residential area in Ridgway, Pennsylvania. The house has eight rooms, four of which are bedrooms and a bath. This is occupied by the appellees, the minors and two

children of the appellees, age 16 and 12. Domenic Insogna is employed by the Firestone Tire and Rubber Company and his average weekly earnings are $95 per week. Harold Galloway is a safety inspector for the Pennsylvania Mfgr's Association.

The record discloses that the Galloway family have an excellent reputation in the community; and the court below found that the children were well and lovingly cared for and are well adjusted in the existing family situation. "It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being." *Com. ex rel. McNamee v. Jackson,* 183 Pa. Superior Ct. 522, 525, 132 A. 2d 396 (1957). "While natural parents have the primary right to a child's custody, there is no fixed or invariable rule that a natural parent, even though of good moral character, is entitled to custody under all circumstances. Each case must finally rest and be determined by its own facts." *Com. ex rel. Kraus v. Kraus,* 185 Pa. Superior Ct. 167, 170, 138 A. 2d 225 (1958). See also: *Com. ex rel. Bradley v. Bradley,* 188 Pa. Superior Ct. 108, 146 A. 2d 145[2] (1958).

It may be presumed to be for the best interest of the child to be in the custody of its parents, and particularly the mother in the case of young children. Compelling reason must appear before a natural parent will be deprived of custody. *Com. ex rel. Keenan v. Thomas,* 151 Pa. Superior Ct. 131, 30 A. 2d 246 (1943). See also: *Cochran Appeal,* 394 Pa. 162 (1958), in which the Supreme Court reversed the decision of this Court, in 187 Pa. Superior Ct. 79, 142 A. 2d 499 (1958). In that case, however, the contest was between natural parents and an institution. We are,

here, discussing a contest between the one parent, the mother, and foster parents, where the children have been in the custody of the foster parents for four years, from the time one was four years old and the other two years old. They had become a part of the Galloway household and it is the only home they remember. The father of the child testified in favor of continuing custody in his brother's family.

The court below properly placed great emphasis on the failure of the appellant's training and control of the older boy Robert, who was in her custody since the separation. It found that he "became involved in the juvenile court, was beyond the control of his mother, did not get along with his stepfather, Domenic Insogna, and left his mother and went to live with his father early in 1957 and has lived with him ever since." Robert Galloway, who was sixteen at the time of the hearing, testified to the domestic turmoil and violence that he witnessed in the Insogna home. Most certainly the experience of Robert in the custody of his mother had considerable weight in the determination of what was best for the welfare of the youngest children. Domenic Insogna corroborated Robert concerning the turmoil and violence in the home. He testified that his wife struck him, cut him and scratched him and that while they were fighting the furniture was upset.

We are inclined to give great weight to the findings of President Judge TRAMBLEY, of the Court below, who had the opportunity of seeing and hearing the parties and the witnesses and is in a much better position to pass upon their ability and character than we are in examining the cold record. *Com. ex rel. Knouse v. Knouse,* 146 Pa. Superior Ct. 396, 22 A. 2d 618 (1941).

We believe the following findings of the court below are justified:

"20. That by reason of the marital difficulties which have existed between Domenic Insogna and Mildred Insogna, which have gone to the extent that Domenic Insogna filed a complaint in divorce against Mildred Insogna, the inability of Mildred Insogna to control her son, Robert Galloway, the irregularity of the attendance at church of Mr. and Mrs. Insogna and Dolores Galloway, the difference in the neighborhoods in which the children would live as between the home of Harold Galloway and his wife and the home of Domenic Insogna and his wife, the accessibility of the schools and the element of safety in going to and from same, the fact that Mildred Insogna and Domenic Insogna did not reveal to the court at the hearing that Domenic Insogna had applied for a divorce from his wife, which divorce was still pending, and the apparent ability of Harold Galloway and his wife to give the children a better home and raise them in a more congenial environment, the best interest and future welfare of the children will be better preserved, advanced and promoted if they remain with Harold Galloway and his wife, Jeanne P. Galloway.

"21. That as a result of a private investigation into the affairs of the Insognas made by this court, the court takes judicial notice of the fact that about the month of April, 1957, Domenic Insogna filed a divorce action against his wife in Allegheny County, Pennsylvania and that this case was still pending at the time of the hearing, which fact was not revealed to the court by the petitioners."

The appellant complains that the decision of the court below, in part at least, was based on information obtained by means of a private investigation. In *Com. ex rel. Oncay v. Oncay*, 153 Pa. Superior Ct. 569, 34 A. 2d 839 (1943), a child custody case, we said at page 570: "We must point out again . . . that reports of in-

vestigators, agents and doctors cannot be received in evidence or considered by the court, in a contested case." Such investigators, agents, doctors, etc. must themselves be produced, sworn and examined as witnesses and be subject to cross-examination. *Com. ex rel. Balick v. Balick*, 172 Pa. Superior Ct. 196, 92 A. 2d 703 (1952). However, that is not the case here. It is true that as a result of a private investigation the court below discovered and took judicial notice of a divorce action filed in Allegheny County, in which Domenic Insogna was the complainant, and the appellant, the respondent. This was not called to the attention of the court by the appellant although it is not denied that the action was brought. Any explanation by the appellant as to the reason for its filing or that it might be discontinued with the consent of the court did not change the fact that the divorce action was instituted and was a court record at the time of the hearing. Taking judicial notice of a court record does not fall within the rule of the *Oncay* case.

In *Com. ex rel. Newel v. Mason*, 186 Pa. Superior Ct. 128, 140 A. 2d 365 (1958), we awarded custody to foster parents as against the father on the paramount consideration of the welfare of the child, and held that custody orders have always been subject to modification, and the fact that the new marriage has existed only since 1954 and in view of the prior marital troubles of the parties, that at least for the present, and until more time passes to test this marriage, the welfare of the child can best be served by remaining in the home she knows and had learned to love. Here, the appellant's remarriage took place in 1955 and there is evidence of almost current trouble and discord between the parties so that the same reasoning prevails. See also: *Com. ex rel. McDonald v. McDonald*, 183 Pa. Superior Ct. 411, 132 A. 2d 710 (1957).

Order affirmed.