406 A.2d 781

Carolyn R. LEWIS, Appellant,

v.

Robert H. LEWIS.

Superior Court of Pennsylvania.

Argued Sept. 12, 1978.

Decided June 21, 1979.

Allen H. Smith, York, for appellant.

No brief filed or appearance entered for appellee.

Before CERCONE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order of the lower court denying a mother's petition for custody of her minor son, Shane, and awarding custody to the father. On this appeal the mother contends that the best interests of Shane will be served by granting custody to her.

The parties were separated in 1977 and divorced in March 1978. Shane was their only child. The mother had custody of Shane during the separation; by an order of the lower

court entered on March 25, 1977, the father was granted certain visitation rights. Under this order, on every other weekend Shane would be left with his father on Friday and returned on Sunday. The father and several witnesses who testified on his behalf said that the mother often failed to come on time for Shane's return to her. The mother said that she left Shane with his father for longer than the required visitation period because she was begged to do so by the father and his friends. In any event, in January 1978, after one particularly long visit with his father, Shane was removed from the apartment by his mother and thereafter was not returned for any more visits. On March 14, 1978, the court entered an order reinstating the visitation order of March 25, 1977, and on April 26, 1978, a hearing was held on the mother's petition for custody.

The mother testified that she lived with her parents in an eight room house in Brodbecks, and that if Shane were to live with her, he would have his own room. She testified that she worked, and that during the time she was at work her mother would take care of Shane. She admitted that she had a boyfriend but denied that she was living with him. She testified that during Shane's stay with his father, Shane shared a bed with his father and his father's girlfriend, Donna Eisenhart. According to her, after returning from a visit with his father, Shane appeared nervous and upset and had trouble sleeping. The mother also testified that she discovered some bruises on Shane's back and that the father had a drinking problem. She admitted that she had violated the order concerning visitation. The lower court heard no testimony with respect to the condition of the mother's parents' house in Brodbecks or the ability of the mother's mother to care for Shane.

The father disputed the mother's testimony concerning the bruises on Shane's back and his drinking problem. He testified that he was living in York in a five room apartment (two bedrooms), which he shared with Donna Eisenhart and his brother Eugene. He also testified that his mother and step-father lived in an apartment upstairs, and that if custo-

dy were given to him, Donna Eisenhart would take care of Shane while he was at work, and on those days when Ms. Eisenhart could not be home, his mother would take care of Shane. There was some testimony to the effect that the father's mother had had a physical problem in the past but was now capable of caring for Shane. The father admitted that Ms. Eisenhart was pregnant with his child. He also admitted that Shane had shared a bed with them, but he said that this had happened only on those nights when Shane had had trouble sleeping. He further admitted that he had not attempted to see Shane, and that he had not paid anything to support him since January 1978.

Cindy Wohnsiedler, Eugene Lewis's girlfriend, testified on behalf of the father. She said that Shane had had the second bedroom of the apartment for himself, and that Eugene slept on the couch in the living room. She also said that as soon as she was released from the Atkin's halfway house in June 1978, she and Eugene planned to move to her parents' house.

Donna Eisenhart testified as to her fondness for Shane and her willingness to take care of him. She admitted that she was pregnant by Shane's father, and indicated that they had discussed marriage and were looking for their own home in New Freedom. She stated that she had seen Shane improperly dressed for cold weather while in his mother's care, and that Shane had had red sores on the back of his hands after staying with his mother.

On rebuttal the mother testified that Shane had blistered his hands by touching hot radiators at her girlfriend's house and that he had caused the sores by picking off the blisters.

At the close of all the testimony, the lower court awarded custody of Shane to the father, with visitation rights to the mother. With the filing of the present appeal a supersedeas was entered, so that Shane has remained with his mother.

It is settled that the paramount concern in a child custody proceeding is to determine what is in the best interests of the child. *Commonwealth ex rel. Parikh v.*

*Parikh,* 449 Pa. 105, 296 A.2d 625 (1972); *Sipe v. Shaffer,* 263 Pa.Super. 27, 396 A.2d 1359 (1979). In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). The award must be based on the facts of record and not on mere presumptions; in particular, the tender years presumption is no longer recognized, *Sipe v. Shaffer, supra; McGowan v. McGowan,* 248 Pa.Super. 41, 374 A.2d 1306 (1977).

In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett,* 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer, supra; Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. *See Sipe v. Shaffer, supra; Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. *See Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. *See Valentino v. Valentino,* 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.* Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. *See Valentino v.*

*Valentino, supra; Commonwealth ex rel. Forrester v. For-rester,* 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra.*

In the present case, the lower court did not fulfill its responsibility to ensure that the record was complete. In its opinion, the court stated:

> When we review the circumstances of the wife, so far as the testimony has presented them, we find testimony that Shane would live in the home with Carolyn and her parents which is an eight-room home in Brodbecks. *There has been no description of the home as to its facilities.* The mother testified that she works five days a week in the evening from 3 to 11 at a convalescent home in York and every other weekend. During the time she works, her mother would take care of Shane. *The mother did not appear to testify. There is no testimony to indicate the condition of the mother; whether she is able and willing to undertake and accept such responsibility.*
>
> \* \* \* \* \* \*
>
> Under all the circumstances in this case, we find this is a very close question. *We know a great deal more* from the evidence in this case as to the type of home and situation the father is able to provide for Shane. We do not have such extensive testimony available so far as the mother is concerned. *All we know* is that she would live with her parents in an eight-room home in Brodbecks, and that the mother's mother would look after Shane while the mother is at work.

Lower Court Opinion at 4 (emphasis added).

Thus, while finding the question of which parent should have custody "very close," the lower court nevertheless proceeded to decide what would be in the best interests of Shane on a record that the court recognized was incomplete in two crucial respects: the characteristics of the mother's home, and her mother's ability to care for Shane.

 In *Commonwealth ex rel. Cox v. Cox, supra,* this court reversed a lower court's award of custody and remanded for a new hearing where there was no evidence on record

concerning the respective living conditions of the parents. In remanding we recommended that the court undertake to have an independent examination of both homes made and suggested that the court look to social welfare agencies for aid in this undertaking. *Id.*, 255 Pa.Super. at 509, 388 A.2d at 1083. Similarly in *Valentino v. Valentino, supra,* this court remanded for a new hearing so that a social worker and a neighbor could testify concerning the condition of the mother's home. *See also Commonwealth ex rel. Forrester v. Forrester, supra* (remand where court's opinion did not discuss, *inter alia,* comparative fitness of parents, ability of parents to provide for children's material needs, and condition of respective homes). Here the lower court should have investigated the conditions of the mother's home and of her mother's ability to care for Shane. The mother's failure to present such evidence herself is not dispositive so far as concerns the determination of Shane's best interests; having recognized a significant failure of proof, it was the lower court's duty to take such action as was appropriate to cure the failure, so that the court would be able to learn what the facts were. *See Gunter v. Gunter, supra* (doctrine of waiver does not apply in child custody proceeding). In this regard, it may be added that the evidence of the father's living conditions was hardly complete or persuasive. The lower court appears to have accepted with little question assertions by the father and his witnesses that Eugene *would be* leaving the father's plainly overcrowded apartment in June, and that the father and Ms. Eisenhart were *looking for* their own home in New Freedom. On the facts of record, the lower court was not in a position to say what would be in Shane's best interests, nor, on appeal, is this court. On remand, therefore, the lower court should conduct a full hearing into the fitness, circumstances, and home environment of each party, as of the time of the hearing. *See Friedman v. Friedman,* 224 Pa.Super. 530, 307 A.2d 292 (1973) (child custody is determined on present conditions).

Reversed and remanded.