419 A.2d 102

**Denise JONES**

v.

**Doris FLOYD, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1979.

Filed March 14, 1980.

Elisabeth Pietry, Philadelphia, for appellant.

Thomas F. Guernsey, Philadelphia, for appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County awarding custody of Darryl Bernard Jones, now 6 years old, to his maternal aunt, Denise Jones. This order also granted custody of Darryl's two half–brothers, Darron and Darnell Jones, to their paternal grandmother, Doris Floyd. Appellant, Doris Floyd, appeals only from that part of the order which granted custody of Darryl to Denise Jones. We reverse the order of the lower court and remand for a new hearing.

Darryl Bernard Jones was born in 1973 to Maida Jones and an unknown father. Maida then lived with Frank Floyd, appellant's son, and two children were born to them, Darnell and Darron Jones. After Frank Floyd was incarcerated in 1976, Maida was forced to move in with her sister, Denise Jones, due to the lack of heat in her own home. Maida took her two sons, Darnell and Darron, to live with her, while Mrs. Floyd took care of Darryl. Maida died on March 3, 1978, and some time that day or the next, Mrs. Floyd sent for the other two children, Darnell and Darron, so that she could care for them while Denise made Maida's funeral arrangements. The three children then continued to live with Mrs. Floyd.

In April, 1978, Mrs. Floyd sought to formalize her custody of the children, and petitioned for legal custody of all three. Denise Jones then filed a writ of habeas corpus seeking the return of Darryl Jones, which was later amended to include a petition for all three of her nephews. The matters were consolidated for trial in August, 1978, and the court's order separating the children was entered in November, 1978.

Appellant raises four issues for our review on appeal: first, whether the best interests of Darryl are served by ordering his custody to be transferred to his maternal aunt and away from his two half–brothers; second, whether the lower court committed reversible error by considering evidence outside the record; third, whether the lower court erred in not having the testimony of the children he inter-

viewed in chambers on record; and fourth, whether the lower court gave improper consideration to an alleged statement of the children's deceased mother that she wanted her sister to care for her children.

■■■ Initially, we note that the primary concern in any custody dispute is the best interest of the child. *Haraschak v. Haraschak*, 268 Pa.Super. 173, 407 A.2d 886 (1979); *Commonwealth ex rel. Steiner v. Steiner*, 257 Pa.Super. 457, 459, 390 A.2d 1326, 1327 (1978). If the hearing judge fully bases his decision of competent evidence concerning the capabilities of the disputing parties to raise the child, his decision will not be reversed on appeal absent an abuse of discretion. *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978). Our review of the lower court's order is the broadest type, but we cannot nullify the fact finding of the hearing judge, who is the best judge of the parties' credibility. *Commonwealth ex rel. Lee v. Lee*, 248 Pa.Super. 155, 161, 374 A.2d 1365, 1369 (1977). From our independent review of the record, we conclude the trial judge did not have sufficient evidence on the record to make a custody award, and we therefore must reverse the order of the lower court.

The evidence adduced at the hearing revealed the following: Appellant, Doris Floyd, holds no blood relationship with the child in question, Darryl Jones. Appellant lives in an eight room home and has other children to care for. Her sources of income include public assistance and a job with a doctor, the specifics of which were not examined at the trial level. Mrs. Floyd's daughter, Diana Wallace, testified that she went to pick–up Darron and Darnell when Maida Jones died, only to find the house of Denise Jones in a state of disarray and the children undressed and caring for themselves. Mary Ruffin, an aunt of Ms. Wallace, accompanied her and corroborated her testimony. Furthermore, the child's mother had placed Darryl with Mrs. Floyd when she moved in with her sister and, therefore, Darryl had resided with appellant for a period of approximately one year.

Denise Jones, the natural mother's sister, testified that she wants custody of her nephew because it was her sister's wish that she care for him. Denise also has other children to care for in her four–room house and receives public assistance. One witness testified to the tidiness of Denise's home.

From the evidence, the hearing judge concluded that he believed Denise's sincerity in her desire for custody of her nephew and that it was Maida's wish that Denise have custody of Darryl. He further concluded that the dispute was between a "relative and a third party," and that absent compelling reasons to the contrary, the relative should prevail. All other factors appeared to be virtually equal in that neither party had adequate means to support another child, but that both would provide as well as could be expected. Therefore, after weighing these four factors–the credibility of the parties, the fitness of the parties, the home environment, and the care of the child–the court concluded Darryl's best interest would be served by placing him in the custody of his maternal aunt.

■ We note initially that in any child custody case at least two requirements must be met. First, that the record must be complete; and second, that the hearing judge must give us a thorough analysis of the record in his opinion. If these requirements are not met, the order must be reversed and remanded. *Gunter v. Gunter*, 240 Pa.Super. 382, 390, 361 A.2d 307, 311 (1976). In the instant case, the lower court's opinion gives us a fairly good analysis of the factors it considered in making the custody award. However, in doing so, it considered evidence outside of that which was adduced at the hearing. Specifically, the court employed information from investigative reports despite the fact that the persons who prepared the reports did not attend the hearing and were not subject to cross–examination. This alone has been held to be reversible error requiring a new hearing. *Wood v. Tucker*, 231 Pa.Super. 461, 332 A.2d 191 (1974). Additionally, the trial court interviewed the child in question in chambers. There is no indication that counsel

was present and the interview was not transcribed for our review. Recent cases have held that such failure to transcribe this *in camera* hearing requires us to reverse and remand for a new hearing. *See Sipe v. Shaffer*, 263 Pa.Super. 27, 36 n.7, 396 A.2d 1359, 1363 n.7 (1979); *Commonwealth ex rel. Steiner v. Steiner*, 257 Pa.Super. at 461 n.1, 390 A.2d at 1328, n.1 (1978); *Commonwealth ex rel. Scott v. Rider*, 248 Pa.Super. 383, 375 A.2d 149 (1977); *Commonwealth ex rel. Lee v. Lee,* supra.

■ In the instant case, as in *Gunter v. Gunter,* supra, there was no investigative testimony of a disinterested social worker, no one testified from either party's church, yet the lower court opinion refers to religious affiliation, no psychologist examined Darryl, his aunt or Mrs. Floyd to help determine where Darryl would best adjust. There was conflicting testimony concerning the living conditions of the aunt, and none concerning the living conditions of Mrs. Floyd. Since we cannot "permit a child's future to be disposed of in summary fashion," *Gunter v. Gunter*, 240 Pa.Super. at 402, 361 A.2d at 317, we are compelled to reverse the order of the lower court and remand for a more purposeful hearing on the record.*

Order reversed and case remanded.

* While we do not wish to single–out counsel involved in this instant case, because carelessness in preparing these custody cases for hearing is epidemic, we do wish to note that there has been an erosion of the standards of hearing and trying cases in family court. This malaise is particularly acute in child custody cases, the quantity of which should not serve to diminish the individual importance of each. We concede the necessity, and even the desirability, of a certain "informality" in such proceedings; but, retrenchment is necessary when the informality breeds chaos at the hearing. There is no valid excuse for completely ignoring the rules of evidence simply because the litigation is in family court. It is nevertheless litigation, and very consequential litigation at that. Therefore, it has come time for us to more rigorously enforce the rules of evidence in reviewing these proceedings, lackadaisical preparation and litigation of these cases will earn counsel little more than another opportunity to present his client's case. We can no longer tolerate the unnecessarily confused and incomplete records which come to us for review in these cases.