437 A.2d 969

**COMMONWEALTH ex rel. MICHAEL R., a minor and Kristin L. R., a minor by their natural mother Sharon L. H. R.**

v.

**ROBERT R. R.**

**Appeal of SHARON L. H. R.**

Superior Court of Pennsylvania.

Argued May 4, 1981.

Filed Nov. 30, 1981.

Robert J. Kerns, Lansdale, for appellant.

William R. Cooper, Lansdale, for appellee.

Before CERCONE, President Judge, and SPAETH and CAVANAUGH, JJ.

SPAETH, Judge:

This is a child custody case. The lower court awarded custody of two children to the father, and the mother has appealed. For the reasons discussed below, we reverse and remand for further proceedings.

The parties were married on June 28, 1975. During their marriage one child was born, Kristin Leigh, on February 24, 1976. In October 1977 the father adopted the mother's son by a previous marriage, Michael, born October 11, 1972. In August or September 1978 the parties separated. The father stayed in their house with the two children. In September 1979 the mother filed for divorce, and in February 1980 she instituted this action seeking custody of both children. On October 10, 1980, after a hearing, the lower court issued an order awarding custody of both children to the father. It is from this order that the mother now appeals.

"It is fundamental that in all custody disputes, the best interests of the child must prevail: all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well being. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972); *Common-*

*wealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972)." *Garrity v. Garrity*, 268 Pa.Superior Ct. 217, 221, 407 A.2d 1323, 1325 (1979). "Among the factors to be considered in determining the best interests of the child are the character and fitness of the parties seeking custody, their respective homes, their ability to adequately care for the child, and their ability to financially provide for the child. *Shoemaker Appeal*, 396 Pa. 378, 381, 152 A.2d 666, 668 (1959)." *Kessler v. Gregory*, 271 Pa.Superior Ct. 121, 125, 412 A.2d 605, 607 (1979).

The obligations of the courts in a child custody case are clear. In *Lewis v. Lewis*, 267 Pa.Superior Ct. 235, 406 A.2d 781 (1979), we said:

> In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer, supra* [263 Pa.Superior Ct. 27, 396 A.2d 1359 (1979) ]; *Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. *See Sipe v. Shaffer, supra; Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. *See Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. *See Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can

the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.* Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. *See Valentino v. Valentino, supra; Commonwealth ex rel. Forrester v. Forrester,* 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra.*

*Id.,* 267 Pa.Super. at 240–241, 406 A.2d at 783–784. *See also Commonwealth ex rel. Berman v. Berman,* 289 Pa.Superior Ct. 91, 432 A.2d 1066 (1981).

■ Application of these principles to the present case discloses several reasons requiring that we reverse and remand.

First, it is apparent from its opinion that the lower court relied to some extent on the fact that the mother has been living with another man, Joseph L., since August 1979. In stating its reasons for awarding custody to the father, the court said:

> The record before us portrays a mother who lost interest in life with father; it portrays a mother who evidently obtained a pleasing alternative in the form of cohabitation with Mr. [L.] for a period which has now exceeded fifteen months and which she would like to extend indefinitely. The hearing judge has no doubt that the mother's action to obtain custody of her two children is in good faith. The resolution of this case has not been easy. However, as the hearing judge stated at the conclusion of the taking of testimony, "on balance these children seem to be well-attended, well cared for, they're comfortably accommodated, . . . happy in . . . school surroundings . . . and I think that Michael is doing well in school . . ." The father, moreover, appears to be the more dependable to provide for the children's physical, intellectual and moral well-being. As to spiritual well-being, there is no evidence that either the petitioner or the defendant has any concern.

Slip op. at 5.[1]

Yet, although referring twice in its opinion to the fact that the mother has been living with another man, *id.*, at 2, 5, the court does not analyze the effect of this relationship upon the children. Mr. L. testified at the hearing, and both he and the mother stated their intention to marry as soon as her divorce became final. However, the court does not discuss or evaluate the evidence concerning Mr. L.'s care for and influence on the children. Our cases have made clear that a parent should not be denied custody of his or her child because of the parent's nonmarital relationship:

> [I]t is the effect of the nonmarital relationship on the child and not the fact of the relationship itself which is crucial to a custody decision. If the evidence shows that a parent's conduct has had harmful effects on the child the court may be justified in denying custody to that parent. On the other hand, if the evidence shows that the parent's conduct has not adversely affected the child and that the parent has taken good care of the child, then the best interests of the child may dictate that the parent retain custody. In each case, all relevant circumstances must be examined to determine what action would be in the best interests of the child.

> *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 140, 360 A.2d 587, 590 (1976).

*See also Gunter v. Gunter,* 240 Pa.Superior Ct. 382, 361 A.2d 307 (1976).

Second, the lower court interviewed both children in chambers out of the presence of counsel and without a stenographer present. In *Jones v. Floyd,* 276 Pa.Superior Ct. 76, 419 A.2d 102 (1980), we said:

> Additionally, the trial court interviewed the child in question in chambers. There is no indication that counsel was present and the interview was not transcribed for our review. Recent cases have held that such failure to transcribe this *in camera* hearing requires us to reverse

1. References to the lower court's opinion are to the opinion prepared January 7, 1981, pursuant to Pa.R.App.P. 1925.

and remand for a new hearing. *See Sipe v. Shaffer,* 263 Pa.Super. 27, 36 n.7, 396 A.2d 1359, 1363, n.7 (1979); *Commonwealth ex rel. Steiner v. Steiner,* 257 Pa.Super. at 461 n.1, 390 A.2d at 1328, n.1 (1978); *Commonwealth ex rel. Scott v. Rider,* 248 Pa.Super. 383, 375 A.2d 149 (1977); *Commonwealth ex rel. Lee v. Lee, supra.*

*Id.,* 276 Pa.Super. at 80, 419 A.2d at 104.

*See also Commonwealth ex rel. Lee v. Lee,* 248 Pa.Superior Ct. 155, 374 A.2d 1365 (1977); *Gunter v. Gunter, supra.*

On remand the lower court should conduct an additional hearing to examine the current living situations of both parents and their ability to care for the children, since the circumstances of the parents may have changed during the appellate process. *See Commonwealth ex rel. Holschuh v. Holland-Moritz* 448 Pa. 437, 447, 292 A.2d 380, 385 (1972). In addition, should the court interview the children, their testimony should be transcribed.

Finally, the lower court's opinion does not fulfill the court's responsibility to provide a comprehensive analysis of the record and a complete explanation of its decision. Four pages of the five page opinion are devoted to a recitation of the history of the parents' marriage and a description of the care and home the father has provided for the children. There is virtually no discussion of the care the mother has provided or of the home she offers the children, nor any comparison of the parents' relative fitness to have custody of the children. The reasoning behind the award of custody to the father is stated in only the most conclusory way, in the statement that "[t]he father . . . appears to be the more dependable." *Id.* at 5. We are thus "without the comprehensive opinion necessary for proper appellate review." *Commonwealth ex rel. Leighann A. v. Leon A.,* 280 Pa.Superior Ct. 249, 254, 421 A.2d 706, 709 (1980).

■ Since the case must be remanded for further proceedings, we shall comment on an argument the mother makes in her brief, which but for our comment she might renew on remand. Citing *In re Custody of Hernandez,* 249 Pa.Superior Ct. 274, 376 A.2d 648 (1977), the mother contends that as

Michael's natural mother she has a prima facie right to his custody, and that the father is as to Michael merely a third party who has the burden of showing by convincing reasons that Michael's best interests dictate that custody be given to him. Brief for mother at 18–19. This argument is without merit. As noted above, in October 1977 the father adopted Michael. A decree of adoption directs "that the person proposed to be adopted shall have all the rights of a child and heir of the adopting parent . . . and shall be subject to the duties of a child to him . . ." 1 P.S. § 502.[2] For the purposes of determining custody, therefore, Michael is as much the father's son as he is the mother's. This does not mean that the mother may not—as she claims to have done—present evidence that the father has favored Kristin, his natural daughter, over Michael, his adopted son; that this favoritism has harmed Michael; and that therefore the father is not the better custodial parent. The point is simply that two parents bear an equal burden. *Lewis v. Lewis, supra; In re Custody of Hernandez, supra.*

The ORDER is REVERSED and the case remanded for further proceedings consistent with this opinion. Any further appeal must be from such new order as the lower court may enter.

CERCONE, President Judge, files a concurring opinion.

CERCONE, President Judge, concurring:

Although I join wholeheartedly in the majority's disposition of this case, I feel constrained to comment upon the paragraph concerning the allocation of the burden of proof between a natural parent and an adoptive parent. This appears to be a case of first impression in this Commonwealth and as such should not be treated lightly.

The majority cites the Adoption Act for the proposition that an adoptive child has the same rights and duties with respect to his parents as does a natural child. In my

2. This act has been repealed and a new Adoption Act enacted effective January 1, 1981. *See* 23 Pa.C.S.A. § 2902(a) for this provision in the new Act.

opinion, it does not necessarily follow from this fact that the adoptive parent and the natural parent of the same child under the circumstances of this case have an equal burden of proof in a custody battle over that child.

Initially, it should be noted that this situation substantially differs from the normal adoption situation. That is, normally the natural parents of a child have signed away or had their parental rights terminated, voluntarily or involuntarily, in favor of the adoptive parents. If the termination or adoption is invalid for some reason, then the natural parents retain their advantage with respect to burden of proof in a custody suit and the purported adoptive parents have become relegated to mere third parties. *See generally* The New Adoption Act of October 15, 1980, P.L. 934, No. 163, § 1, 23 Pa.C.S. §§ 2101–2908 (Supp.1980); *In re Adoption of R. W. B.*, 485 Pa. 168, 401 A.2d 347 (1979); *In re Adoption of P.*, 475 Pa. 197, 380 A.2d 311 (1977); *Adoption of Baby Girl Fleming*, 471 Pa. 73, 369 A.2d 1200 (1977). Thus, in this type of a situation the status of an adoptive parent and that of a natural parent are mutually exclusive.

The instant case, however, is not so easily categorized. Here the natural parent of the child in question has retained her status as such, and her new spouse, by agreement, has become the adoptive parent of the child.[1] The crucial fact here is that there has been no voluntary termination of the natural parent's rights. After the natural mother and the adoptive father separated, the question concerning the burden of proof between them in a custody dispute soon manifested itself. The unique character of this situation, therefore, is that of a dispute between a natural mother who has not terminated any of her rights or duties with respect to her child, and an adoptive father who has voluntarily taken on the rights and concomitant obligations of parenthood.

---

1. Although adoption usually terminates all of the natural parent's rights with respect to his or her child, 2 Am.Jur.2d *Adoption*, §§ 84–85 (1962), the natural mother in the present case *retained* all of the previous parental rights she previously had with respect to her child because the adoption to which she consented in no way affected her parental rights, but gave adoptive parent's rights to her new husband. 23 Pa.C.S. § 2903.

Although there are no Pennsylvania cases directly on point, we can obtain guidance from our case law which holds that a *"natural"* or *"biological"* parent has an advantage with respect to the burden of proof in custody suits against third parties. *Albright v. Com. ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980); *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980); *In re Hernandez*, 249 Pa.Superior Ct. 274, 376 A.2d 648 (1977). In *Hernandez*, Judge Spaeth, writing for a majority of this Court, articulated two reasons why the burden of proof is equal when dealing with natural parents *inter se* and, presumably, not equal when dealing with natural parents as against third parties: (1) the parent's legal obligation to support his or her child; and (2) the biological relationship which exists between parent and child. *Id.*, 249 Pa.Super. at 281 n.2, 376 A.2d at 651 n.2. Consequently, appellant herein cites the *Hernandez* case in support of her contention that the father must come forward with "compelling reasons" in order to obtain custody of his adoptive child. When applying the *Hernandez* rationale to the instant facts it becomes apparent that while the legal obligation of support is present in the relationship between the father and his adoptive son, there is lacking the important biological relationship which was stressed in *Hernandez. See also Ellerbe v. Hooks*, 490 Pa. at 372, 416 A.2d at 516. For this reason, I must take exception to the majority's allocation of an equal burden of proof between the natural mother and the adoptive father in the instant case.

If we are to accept *Hernandez* and its rationale, then in the interest of consistency and stability, I feel we should follow through with this type of analysis when faced with situations like the present one. In my opinion, therefore, I would treat this case as different from a natural parent versus natural parent suit in which the burden of proof is equal, as well as different from a natural parent versus third party suit in which case the scales are tipped heavily in favor of the parent. Thus, we would be obliged to establish a burden of proof which is not equal, thereby giving weight to the important biological relationship between natural

parent and child. But, on the other hand, the burden of proof should not be so great as to require an adoptive parent to show "compelling reasons" in order to obtain custody, thereby reflecting a refusal by the courts to unjustifiably relegate an adoptive parent to the position of a mere third party. Thus, with the efficacy of *Hernandez* still intact, I would be in favor of an intermediate type of burden of proof requiring an adoptive parent to come forward with substantial, as opposed to compelling, reasons why it is in the child's best interest that custody be established in his or her favor rather than in favor of the child's natural parent.

This then brings me to my final point: with the courts becoming more attuned to the paramount concern for arriving at custody decisions which are in the best interests of the child, it appears incongruous to be concerned with "prima facie rights", presumptions, and favorable allocations of the burden of proof to which a natural parent is *entitled*![2] Our body of recent custody decisions has disfavored the approach which stresses rights and entitlements of the litigants and

**2.** In *Albright*, Justice Nix took the *Hernandez* Court to task with respect to its distinctions between the "three variations" of the test:

The *Hernandez* Court also took issue with those decisions that formulated the standard in terms of a presumption in favor of a parent. *Commonwealth ex rel. Bendrick v. White*, 403 Pa. 55, 169 A.2d 69 (1961); *Auman v. Eash*, 228 Pa.Super. 242, 323 A.2d 94 (1974); *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968); *Commonwealth ex rel. Galloway v. Galloway*, 188 Pa.Super. 313, 146 A.2d 383 (1958). This objection is probably nothing more than a semantic quibble. "Prima facie" is in reality nothing more than a procedural device which assigns the burden of proceeding with the evidence. A fact presumed to be true unless disproved by some evidence to the contrary. *Mineo v. Eureka Sec. F. & M. Ins. Co.*, 182 Pa.Super. 75, 125 A.2d 612 (1956); *Beckman v. Brownback*, 341 Pa. 565, 20 A.2d 200 (1941); *Johnson v. State*, 258 Ind. 648, 283 N.E.2d 532 (1972); *Dal. Int'l Trading Co. v. The Milton J. Foreman*, 171 F.Supp. 794 (E.D.N.Y.1959); *Detig v. Kelley*, 17 Ill.App.2d 496, 150 N.E.2d 845 (1958); *Herbert v. Whims*, 68 Ohio App. 39, 38 N.E.2d 596 (1941); Black's Law Dictionary 1353 (Rev. 4th ed. 1968). The real questions are the quality and quantity of evidence required to overturn the presumption. It is doubtful whether either term, i.e., "presumption " or "prima facie" is particularly helpful in this regard.

*Albright v. Com. ex rel. Fetters*, 491 Pa. at 325–26 n. 1, 421 A.2d at 159 n.1.

has instead emphasized what custodial arrangement would be in the child's best interest. *See generally* Bertin, Emanuel A. and Klein, Vanessa Anthony, *Pennsylvania's Developing Child Custody Law*, 25 Vill.L.Rev. 752 (1980) [hereinafter "Bertin & Klein"]. If this is truly the key to our custody decisions, then perhaps it is time to totally disclaim a rights or entitlements type of analysis with respect to the burden of proof. *See Ellerbe v. Hooks*, 490 Pa. at 371, 416 A.2d at 515 (1980) (Flaherty, J., concurring) and Bertin & Klein, *supra* at 758. The litigants should simply be put on an equal footing at the outset, and then the entire realm of facts and circumstances which are relevant to determining who is the best custodial parent should be considered. Whether one of the litigants is a natural parent, an adoptive parent, a relative, or a mere third party, would then simply become one of the factors to be considered in the analysis of what custodial arrangement is in the best interest of the child.

By clearly eliminating the presumption *per se*, and mandating that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration*, custody proceedings would be disentangled from the burden of applying a presumption that merely beclouds the ultimate concern in these cases: the determination of what affiliation will best serve the child's interest, including physical, emotional, intellectual, moral, and spiritual well-being. (Emphasis in original).

*Ellerbe v. Hooks*, 490 Pa. at 373–74, 416 A.2d at 516–17 (Flaherty, J., concurring) (suggestion that the *Hernandez* standard be replaced with a clear and simplified version of the best interest test).

Nevertheless, because *Hernandez* has been adopted by the Supreme Court in *Albright* and *Ellerbe*,[3] I feel consistency

---

**3.** *See also Wrecsics v. Broughton*, 285 Pa.Superior Ct. 90, 426 A.2d 1155 (1981); *In re Donna W.*, 284 Pa.Superior Ct. 338, 425 A.2d 1132 (1980); *Palmer v. Tokarek*, 279 Pa.Superior Ct. 458, 421 A.2d 289 (1980).

Justice Flaherty's concurring opinion in *Albright* proclaims that the views he espoused in *Ellerbe* have been vindicated. 491 Pa. at 329, 421 A.2d at 161 (Flaherty, J., concurring). In my opinion, however,

requires that an adoptive parent show substantial reasons why he or she should obtain custody of the child in question as opposed to the natural biological parent of such child.

this is less than clear because the *Albright* majority does purport to follow *Hernandez* and *Ellerbe* and does provide the natural parent with a favorable, albeit tempered, burden of proof. I subscribe to the view that the *Hernandez* line of cases must be repudiated before Justice Flaherty's proclamation is fulfilled. *See Bertin & Klein, supra* at 756 n. 33 ("In view of the majority's holding in *Ellerbe*, it is submitted that the *Hernandez* decision would have to be modified or overruled in order for the presumption to be abolished").