460 A.2d 1167

**COMMONWEALTH ex rel. MICHAEL R., A Minor, and Kristin Leigh R., A Minor, by Their Natural Mother, Sharon Lynn Hangey R.**

v.

**ROBERT R.R.**

**Appeal of SHARON LYNN HANGEY R.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1982.

Filed May 13, 1983.

336

Robert J. Kerns, Lansdale, for appellant.

William R. Cooper, Lansdale, for appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

The trial court ordered a continuation of the custody of the two children, Michael and Kristin, with their father.[1] The mother has appealed.

The mother and father married each other in 1975, both having been married before. Michael was two years old at the time. Kristin was born in 1976. In 1978 the mother left and went to live with a woman friend for a while, and then moved in with the man to whom she is now married and by whom she has a daughter, Gina, born in 1981.

In 1980 the mother filed a petition seeking custody of Michael and Kristin who were still living with their father. After a hearing the court awarded custody to the father. The mother appealed to this court which reversed and remanded[2] the case on three grounds: (1) the trial court had relied to some extent on the fact that the mother was living with another man (now stepfather), but did not analyze the effect of this nonmarital relationship on the chil-

[1] Appellee father is the natural father of Kristin, and the adoptive father of Michael who was born to the mother during her first marriage and whom appellee adopted after marrying appellant mother.

[2] *Commonwealth ex rel. Michael R. v. Robert R.*, 293 Pa.Super. 18, 437 A.2d 969 (1981).

dren; (2) the trial court had interviewed the children in chambers without the presence of counsel or of a stenographer; (3) the trial court's opinion lacked a sufficiently comprehensive analysis of the record and complete explanation for its decision.

After remand the trial court ordered a home investigation by Montgomery County Children and Youth Services, and conducted a second hearing, updating the record to reflect any changes in circumstances. Following this hearing, which was held in May 1982, the trial court again awarded custody to the father. The mother again has appealed. Reluctantly, we again vacate and remand.

The errors asserted in this second appeal are that the trial court's decision to award the children to the father was an abuse of discretion, and that the trial court further abused its discretion in not conducting another, transcribed, interview with the children in order "to determine their preferences and to determine the treatment they have received from both parents."

The trial judge, both at the second hearing and in his second opinion, explained that he chose not to interview the children, rather than to expose them to a risk of possible parental retaliation later on as a result of the mandated transcription of their conversation with him. At this second hearing the trial judge explained that he would neither interview the children again, nor consider what they had said to him at the time of the first hearing. The mother's counsel responded that he was not advocating that the children be interviewed, but that "there could be a problem, because much of the testimony ... is based on what the parents know from the children as to what happens to them." N.T. May 3, 1982 at 4. On appeal the mother argues that "refusal" to interview the children prevented the court from determining what weight should be given to the children's preference.

The rule is that the preference of the children is a factor to be considered. *Commonwealth ex rel. Pierce v.*

*Pierce,* 493 Pa. 292, 426 A.2d 555 (1981). And, where the children are interviewed, the weight to be accorded their preference depends on their age, intelligence and maturity. *Id.* The question of the weight to be given the children's preference arises if and when the children are interviewed. The children are not interviewed in order to determine the weight to be attached to their preference. In this case, the trial court did not interview the children, nor does the court appear to have considered, in reaching its decision, the preference of six-year-old Kristin, as expressed to the court-appointed home investigator, for custody with her mother. *See* note 5 *infra.*

■ Where the trial court interviews the children and then takes what was said into consideration in reaching its decision, it commits reversible error if that interview is not available to the appellate court—the absence of a transcript of that interview depriving the appellate court of the opportunity to conduct its own complete and thorough review of the record so that it may fulfill its duty under its broad scope of review. *See Commonwealth ex rel. Scott v. Rider,* 248 Pa.Super. 383, 375 A.2d 149 (1977); *Commonwealth ex rel. Lee v. Lee,* 248 Pa.Super. 155, 374 A.2d 1365 (1977); *Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972).[3] But we are reluctant to rule that not interviewing the children is *per se* a reversible error.

Therefore, if the mandatory requirements—a complete record and a comprehensive opinion containing a thorough analysis of the record and the specific reasons for the trial

---

**3.** We appreciate the trial court's sensitivity to the children's welfare in not wishing to "memorialize" the children's words. However, it has been the rule for quite some years that their testimony must be transcribed for the sake of proper appellate review. There are methods, other than a decision not to interview the children, which can combine President Judge Lowe's strong wish to protect the children and the superior court's insistence on transcribing the testimony of the children. *See, e.g., Commonwealth ex rel. Grimes v. Grimes,* 281 Pa.Super. 484, 489–492, 422 A.2d 572, 575–576 (1980); *Commonwealth ex rel. Scott v. Rider,* 248 Pa.Super. 383, 386–387, 375 A.2d 149, 151 (1977).

court's decision—are satisfied, we shall not reverse and remand this case. We have no desire to prolong the anxiety of the two children involved and the stress on the two families by reversing a decision where the lower court erred, if at all, without harm to the parties.

■ Before passing to the fundamental custody question in this case we shall address the mother's argument that the "refusal" to interview the children combined with the refusal to permit hearsay statements of the children prevented her counsel from presenting his case. The mother provides us with several examples. First, she refers to an incident in February 1981, involving a possible spanking of Kristin by the sitter in whose care the father was leaving the children. The sitter was replaced as a result of the incident. We reiterate the rule that it is *current,* and not past, conditions on which custody is awarded. *McGowan v. McGowan,* 248 Pa.Super. 41, 374 A.2d 1306 (1976). The problem having been solved, no purpose would have been served by raising it with the children a year and a half later. Second, the mother sought to raise the question of a purported spanking of Kristin by the new sitter selected by the father. The mother, however, testified that she had declined to discuss this problem with the former husband in part because she did not want to be a "trouble maker". N.T. at 15. We cannot sympathize with the lack of opportunity for counsel to question the children on a matter involving their sitter's conduct, if the mother has herself not taken measures to remedy a purportedly worrying situation, *e.g.,* by discussing it with the children's father or even with the sitter. To seek to introduce evidence of the sitter's conduct only through questioning the children does not seem the appropriate way of meeting her burden of proving *her* fitness for custody. The third matter was Kristin's unhappiness in the soccer league. This again seems to be a matter for her to raise with the children's father or with the soccer coach. Questioning Kristin in court about the soccer league is hardly the way for the mother to meet her burden of proving her fitness for custody.

■ We emphasize that the burden in a custody case is on each parent to prove that the best interests of the child will be served by the placement of the child with him or her. *In re Custody of J.S.S.,* 298 Pa.Super. 428, 444 A.2d 1251 (1982); *Beichner v. Beichner,* 294 Pa.Super. 36, 439 A.2d 737 (1982). In other words it is an affirmative burden, rather than the negative one of proving the opposing party's unfitness.

The fourth matter was the amount of time the father spends with the children. This can be and was shown by testimony from the father and the father's new wife [stepmother]. The court was additionally aware through the home investigator's report that Michael expressed anxiety about his father's absences from home. We conclude therefore that this argument is without merit.

■ In custody cases the scope of our review is very broad. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Oxenreider v. Oxenreider,* 290 Pa.Super. 63, 434 A.2d 130 (1981). We do not usurp the fact-finding function of the trial court, but we are not bound by the deductions or inferences made by the trial judge from the facts he has found. We need not accept a finding which has no competent evidence to support it, but are instead required to make an independent judgment based on the evidence and testimony, and make such order on the merits of the case as to do right and justice. *See Garrity v. Garrity,* 268 Pa.Super. 217, 407 A.2d 1323 (1979), and cases cited therein.

■ So as to facilitate this broad review, we consistently emphasize that the trial court must provide us with a complete record and a comprehensive opinion containing a thorough analysis of the record and specific reasons for the court's ultimate decision. *In re Custody of J.S.S.,* 298 Pa.Super. 428, 444 A.2d 1251 (1982); *Garrity v. Garrity,* 268 Pa.Super. 217, 407 A.2d 1323 (1979).

In line with this responsibility we shall make our own analysis rather than rely on the arguments in the mother's

brief which tend to dwell on the father's purported unfitness (*e.g.,* he only married the children's step-mother shortly before the hearing; he only sends the children to church because the court recommended some religious training; he only changed sitters in 1981 because of the mother's complaints; there is a lack of communication between the two parents).

The mother and the stepfather live with their baby daughter in a seven-room duplex owned by the stepfather's mother. There is a fenced-in yard, and a playground across the street. The mother works as an administrative assistant and is absent from the house between 8:00 a.m. and 5:30 p.m. Her baby is in the care of a sitter. The stepfather works in a tavern and in a grocery store which are both family businesses. His hours are varied. The children visit their mother and step-father on alternate weekends and for six weeks during the summer.

The father, step-mother and children live in the same house as before the break-up of the father and mother's marriage. It is a townhouse in a development in a rural section of the town. It is a nine-room house with a small fenced-in back yard. There is a swimming pool and recreation area as part of the townhouse complex. The father is a sales engineer who is absent from the house from 7:30 a.m. to 5:30 p.m. daily, and occasionally overnight for business trips. The step-mother, for whom this is a second marriage, also works and is away from the home daily. She testified that she planned to quit work and take care of the children once she had sold a house she owned. She has no children of her own. At the time of the hearing, Michael was in school a full day and Kristin was in kindergarten for half a day. The father would take both children to the sitter's house, where they were picked up and left off by the school bus. Either the father or the step-mother collected them from the sitter's after work.

The trial court took note of such material circumstances and also of the financial circumstances of both families, as is required. See *Lewis v. Lewis,* 267 Pa.Super. 235, 406

A.2d 781 (1979) (requiring record on fitness, circumstances and home environment of all parties).

The step-father participates with the children in sports activities when the children visit. The father appears to participate to a certain extent in the children's activities, as well as orchestrating the children's participation. The mother does not involve herself in any religious instruction, although the step-father, a Roman Catholic, claims to discuss religious, moral and ethical matters with Michael. The father takes the children to Sunday School at the United Church of Christ, following the trial court's recommendation, at the first hearing, that there be some religious education. Both the father and the step-father testified to helping Michael with his school work.

The duty of the courts is to determine what is in the children's best interests. The children's physical, intellectual, emotional, moral and spiritual well-being is what we seek to secure. *See Commonwealth ex rel. Holschuh v. Holland—Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *In re Custody of J.S.S.,* 298 Pa.Super. 428, 444 A.2d 1251 (1982). It is in order to achieve this that we demand a complete record and a thorough analysis of it by the trial court, and that we make our own independent review of the case.

We are disturbed in this case by several gaps in our knowledge of the parties and circumstances involved. We have frequently repeated the need for disinterested testimony. *See, e.g., Jones v. Floyd,* 276 Pa.Super. 76, 419 A.2d 102 (1980). *See generally, Gerald G. v. Theresa G.,* 284 Pa.Super. 498, 426 A.2d 157 (1981) (opinion by HOFFMAN, J. and concurring opinion by BROSKY, J.). The trial court ordered a home investigation by the local children's welfare service. In his opinion [4] the trial judge stated that he had taken the report of that investigation into consideration in reaching his decision. In the transcript of the hearing the

---

**4.** *Commonwealth ex rel. Michael R. v. Robert R.,* No. 80–2831, slip op. at 1 (C.P. Montgomery County, June 3, 1982).

report is referred to by counsel.[5] But no caseworker from the service testified at the hearing. We have stated that it is reversible error for the trial court to use information from investigative reports where the persons who prepared the reports did not attend the hearing and were not subject to cross-examination. *See Jones v. Floyd*, 276 Pa.Super. 76, 79–81, 419 A.2d 102, 104 (1980); *Rummel v. Rummel*, 263 Pa.Super. 97, 98–99, 397 A.2d 13, 14 (1979); *Wood v. Tucker*, 231 Pa.Super. 461, 332 A.2d 191 (1974); *Commonwealth ex rel. Oncay v. Oncay*, 153 Pa.Super. 569, 570, 34 A.2d 839, 839 (1943).

Similarly, Michael's school report cards for two years were admitted into evidence, yet no responsible official from the school testified. This is a particularly significant lack in view of suggestions in the record that Michael is or has been at times a nervous child,[6] N.T. May 3, 1982, at 60, 92, and in view of the statements that Michael's school work and behavior has improved, N.T. May 3, 1982, at 83, 95–96, 136, 148.

There are allusions to Michael wetting his bed, N.T. May 3, 1982, at 18, 96, and suffering from eczema, N.T. at 16–17, 79–80, 113–14. But there is no expert testimony from the treating physicians, or from a child psychologist, with respect to the father's testimony that such physical difficulties are unrelated to any emotional difficulties. *See, e.g.*, N.T. May 3, 1982, at 114.

Although the father testified that Michael was doing very well in Cub Scouts, and introduced a newspaper clipping about a Cub Scout "Bake-off auction" in which he and Michael participated, no one from the Cub Scouts or from the church where Michael goes to both Sunday School and Scouts testified. Thus there is a twofold problem here:

**5.** *See, e.g.*, N.T. May 3, 1982 at 81, 102. The reports are not included in the record which was forwarded to this court. There is only a copy of them in appellant's reproduced record.

**6.** There are also allusions, in the testimony at the first hearing, to Michael having a discipline problem, *e.g.*, N.T. October 10, 1980, at 34, 83.

there is (1) almost no testimony from any extra-familial witness,[7] and (2) there are reports with no in-court testimony from the person who made them. *Compare Jon M.W. v. Brenda K.*, 279 Pa.Super. 50, 420 A.2d 738 (1980), where the trial court heard testimony of those intimately involved with the children's daily routine, such as teachers, neighbors whose children played with the children in question, and after-school sitters.

The trial court also came to certain conclusions without explaining for this court's benefit how he reached them—significantly that the children are in a happy, stable environment and that the mother is less reliable and more unstable than the father. We do not deny these conclusions to be accurate. We simply do not know on what they are based. This is particularly so when what extra-familial testimony we have—namely the physician's testimony at the first hearing and the home investigator's report—appear to favor the mother's emotional attachment to her children.[8] The trial court did not explain to this court why

7. At the first hearing in October 1980 there was testimony from a physician (whose specialty is not indicated in the transcript) whom the mother had consulted a few months after the separation. Subsequently the mother and the step-father (who were not yet married to each other) and the two children visited the physician. Based on that interview and on a further consultation without the children present, the physician expressed the opinion that the mother and step-father had a stable relationship and would provide optimum security for the children. *See* N.T. October 10, 1980 at 4–18. In his decision after the first hearing the trial judge discounted this opinion.

At the second hearing a nurse who is a friend of the mother's testified. Her testimony was chiefly about the finding of marks on Kristin's thighs and buttocks in February 1981 when Kristin came to visit her mother after being with the sitter. The children were removed from that sitter's care that same week-end as a result of these marks. The witness also testified that she observed the children as contented when visiting their mother.

8. We note that the youth services' investigator did not observe the children together with their mother and step-father, yet recommended that custody be placed with them. In *In re Custody of J.S.S.*, 298 Pa.Super. 428, 444 A.2d 1251 (1982), we lamented the lack of any observation by the social worker of interaction between the child in question and the person to whom the trial court awarded custody. The instant case involves a very different situation, but we emphasize

his view differs. We appreciate that face-to-face dealing with the parties gives the trial court an advantage over the appellate court. But this is precisely why we require that the trial court articulate the reasons for its conclusions. *See Commonwealth ex rel. Jordan v. Jordan*, 302 Pa.Super. 421, 448 A.2d 1113 (1982); *Gunter v. Gunter*, 240 Pa.Super. 382, 397, 361 A.2d 307, 315 (1976).

We are thus obliged, for the reasons given in this opinion, reluctantly to remand this case yet again for a hearing updating the facts and containing more objective testimony, and for a more complete analysis of the reasons for the trial judge's decision. We realize that the trial judge may well reach the same result, but we cannot affirm on the present state of the record before us. Vacated and remanded. Jurisdiction relinquished.

POPOVICH, J., concurs in the result.

HESTER, J., files a concurring and dissenting opinion.

HESTER, Judge, concurring and dissenting:

I must dissent from the majority opinion based upon the standard of review utilized therein. The majority articulates a belief that this court should engage in a broad and comprehensive review of the record so as to reach an independent decision regarding the custody of these children. In doing so, the majority specifically exceeded the abuse of discretion standard which has traditionally been employed in the past. See *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977) (plurality opinion by Nix, J., with three Justices concurring); *McCourt v. Meyers*, 268 Pa.Super. 152, 407 A.2d 875 (1979); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978); *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977). I believe this standard should not be discarded without a thorough and careful analysis of the appropriate function of this court in such cases by either our Supreme Court or an *en banc* panel of this court.

that in reports for custody hearings the court-appointed investigator should observe interaction between the parties involved.

However, applying the abuse of discretion standard, my analysis of this case likewise compels the same conclusion as is reached by the majority. It is a fundamental precept of law that a hearing judge must base his decision on competent evidence. *In re Custody of Neal, supra.* By considering evidence adduced outside the hearing in the form of investigative reports, the hearing judge abused his discretion. *Jones v. Floyd,* 276 Pa.Super. 76, 419 A.2d 102 (1980). For this reason, I am constrained to agree that a new hearing is mandated in this case. At that time, it would be beneficial to hear *some* impartial witnesses, although not necessarily all of those potential witnesses enumerated by the majority, in order to provide the court with objective observations independent of close family friends or spouses.