439 A.2d 1190

**Scott D. McCANN, Appellant,**

v.

**Nancy DOMIAN.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1981.

Filed Jan. 8, 1982.

appellant's other claims with regard to his assault conviction have been waived. *See* note 1 *supra.*

Nikki Ann Tufano, Pittsburgh, for appellant.

John A. Knorr, Pittsburgh, for appellee.

Before SPAETH, HESTER and SHERTZ, JJ.

HESTER, Judge:

Presently before the court is appellant-father's appeal from the order of the lower court awarding general custody of the parties' minor children (Carrie, born 8/2/73 and James, born 3/31/75) to the appellee-mother.[1]

We affirm.

The relevant facts may be summarized as follows:

The appellant, Scott McCann and the appellee, Nancy Domian were married on January 11, 1973. Two children were born of the marriage: Carrie Lynn, born August 2, 1973 and James Scott, born March 31, 1975. A final separation between the parties occurred in July, 1976 and a decree in divorce issued on July 27, 1977. Pursuant to an agreement between the parties, the appellee/mother retained custody of the children with partial custody in the appellant/father. After the divorce, mother and children lived in

---

1. The appealed from Order of Court provides in its entirety:

"AND NOW, this 5th day of December, 1979, following a full hearing on November 28, 1979, with both parties present and their respective counsel, custody of the parties' minor children, CARRIE (born, August 2, 1973) and JAMES (born, March 31, 1975), is awarded to their mother, NANCY DOMIAN, the defendant herein, under and subject to such partial custody arrangements as shall be agreed to between the parties.

Absent such agreement, the father, SCOTT McCANN, shall have partial custody every other weekend from Friday evening at 5 P.M. until Sunday evening at 8 P.M. beginning Friday, December 21, 1979. In addition, the father shall have partial custody from 12 Noon until 8 P.M. on Christmas Day and on alternating national holidays from 5 P.M. the preceding evening until 8 P.M. the evening of said holiday beginning with January 1, 1980, Memorial Day and Labor Day, 1980, and the next year said holidays shall be Easter Sunday (if not part of his regular weekend), Fourth of July and Thanksgiving.

THIS ORDER shall become effective at 5 P.M. on December 14, 1979.

BY THE COURT
/s/ Kaplan, J."

a two bedroom apartment for approximately 6 months until January 1, 1978 at which time they moved in with the maternal grandparents, for financial reasons.

The appellant, Scott McCann, married his present wife, Kathleen, in August, 1977. One child has been born of this marriage, who was 2 years of age at the time of the hearing. Kathleen's child of a prior marriage, age 4 at the time of the hearing, was also living with the McCanns.

In April, 1978 the appellee Nancy Domian, went to Florida for a short stay, leaving the children with their maternal grandparents, with whom they had been living. After exercising his normal weekend partial custody rights, the appellant/father failed to return possession of the children. In May, 1978, upon her return from Florida, the appellee and her father removed the children from the appellant's yard where they had been playing. The extent to which force was used in this instance is a matter in dispute. A short time later, in June, 1978, Scott and Kathleen McCann attempted to forcibly remove the children from the appellee while they were attending a fair with their mother and aunt at a department store parking lot. Assistance was rendered by store personnel and the McCandless Township police. Prior to this incident, a custody hearing had been scheduled for June, 1978. At that time, a consent agreement was reached between the parties, granting custody to the mother with the father to exercise partial custody on alternating weekends and certain holidays. During this period the appellee/mother and the children continued to live with the maternal grandparents.

In October, 1978, the appellant's parents sold their home in Pittsburgh somewhat unexpectedly with plans to relocate to the State of Florida. A review of the testimony reveals that the appellee suggested to the appellant that the children move to Florida with her parents for a few months, at which time she would join the children and her parents. Upon objection of the appellant and after meeting with Scott and Kathleen McCann, the appellee testified that she agreed to leave the children with their father for a period of

a few months until she was financially stable or at the latest until June of 1979. The appellant and his wife, on the other hand, testified that the appellee stated she was uncertain as to when she would retrieve the children, that she wanted to pursue a career and might never want the children. The appellee did continue to see the children each weekend throughout this period, from Friday evening or Saturday morning until Sunday evening. Mrs. Domian was married to her present husband, Richard, in October, 1979.

The appellant/father filed the instant complaint for custody of the parties' children and a brief hearing was held in June, 1979, after which an interim order issued, granting temporary custody to the father pending a final and more complete hearing in November, 1979. Said hearing was held on November 28, 1979 lasting one full day, after which the order granting custody to the mother was issued, said order being the subject of the instant appeal.

As this court in *Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 at 783–4 (1979) so aptly stated.

It is settled that the paramount concern in a child custody proceeding is to determine what is in the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972); *Sipe v. Shaffer*, 263 Pa.Super. 27, 396 A.2d 1359 (1979). In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). The award must be based on the facts of record and not on mere presumptions; in particular, the tender years presumption is no longer recognized, *Sipe v. Shaffer, supra; McGowan v. McGowan*, 248 Pa.Super. 41, 374 A.2d 1306 (1977).

In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the

appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer*, supra; *Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. See *Sipe v. Shaffer, supra; Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. See *Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. See *Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.*

We have engaged in a comprehensive review of the record of the proceedings below and have made an independent judgment based upon a careful review of the evidence. We are satisfied that the relevant facts and circumstances have been explored.

Ms. Linda McCrady, a realtor who had viewed the homes of each of the parties, testified as to the general state of disrepair of the McCann home. The problems went beyond a lack of cleanliness and included such dangerous conditions as broken and crumbling cement on the front steps and paint chips on the floor. Mrs. Domian's home, on the other hand, was described as clean and well-kept.

Neighbors testified as did Ms. McCrady to the indifference displayed by Mr. McCann towards his children. The weight of the evidence reveals that the appellant spent little time with the children and was not active in their care. The appellant himself did not testify to any activities in which he

engages with the children. Moreover, he could not recall an incident wherein his young son was struck in the eye requiring an emergency trip to the hospital and stitches near the eye.

In conjunction with this lack of attention on the part of the appellant, there was evidence that the appellant does have somewhat of a problem with alcohol. Mr. McCann denied ever drinking to excess but did admit to consuming 2–3 beers several times a week. Further, both he and his present wife admitted that they frequently disagree about his drinking. Mrs. Domian testified to the excessive use of alcohol by Mr. McCann and this testimony was supported by neighbors as well as by Ms. McCrady, the realtor.

Additionally, there was evidence that Mr. McCann had been somewhat lax in his obligation to provide financial support for the children. At the time of the parties' separation, Mr. McCann left the marital home, leaving his then wife and infant children with little or no money at hand. Even after an Order of Court issued for the support of the children, Mrs. Domian was compelled to seek and obtain a wage attachment after Mr. McCann failed to comply.

Finally, in marked contrast to the indifference which Mr. McCann's actions reveal, the appellee, Mrs. Domian, testified that "those children mean everything in the world to me" (T. 126). Both Mr. and Mrs. Domian appear to have established a warm parental relationship with the children. Even Mr. McCann admitted that his ex-wife was a good mother (T. 57). When asked about her relationship with her children, Mrs. Domian testified:

"I love my children. They mean everything to me. They always have. After Scott [the appellant] left, me and the kids, we didn't have anybody except for each other. I've raised them all their lives all by myself. Up until now, Scott never, ever shown any interest in those kids... (T. 143).

As stated above, even after the appellee voluntarily gave the children to the appellant on what appears to have been a temporary basis, she continued to spend every weekend with

them and upon obtaining suitable living arrangements, attempted to regain possession of them on a full-time basis.

Accordingly, for all of the above reasons, we affirm.

SHERTZ, J., concurs in the result.

Decision was rendered prior to SHERTZ, J., leaving the bench of the Superior Court.