J-A11032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| G.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| A.Z. | : | |
| | : | |
| Appellant | : | |
| | : | No. 31 WDA 2021 |

Appeal from the Order Entered December 16, 2020
In the Court of Common Pleas of Erie County Domestic Relations at
No(s): 2020-11875

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: JUNE 21, 2021**

A.Z. (Mother) appeals from the custody order entered in the Erie County Court of Common Pleas, relating to the parties' son, T.P. (Child). Mother argues the trial court erred in: (1) not analyzing the 23 Pa.C.S. § 5328 custody factors in a timely manner; (2) failing to provide Mother a meaningful opportunity to be heard and failing to inquire into the Section 5328 custody factors; and (3) awarding G.P. (Father) unsupervised physical custody of Child.[1] After careful review, we vacate the order and remand for further proceedings.

The certified record contains minimal background information regarding this family. The record indicates Child was born in November 2010, and

_____

[1] Father has not filed a brief.

Mother and Father were not married at the time. The trial court's opinion indicates the parties separated in approximately July 2020, which is when Father last saw Child. *See* Trial Ct. Op., 2/1/21, at 7 ("Child's relationship with Father was abruptly ended on July 12th with the parties' separation.").

On September 16, 2020, Father filed a *pro se* complaint for custody, in which he requested shared physical custody of Child. The parties participated in a conciliation conference on October 16th. According to the conciliation summary, Mother rejected Father's request and proposed he should instead receive supervised partial physical custody. Mother alleged, *inter alia*, that Father was mentally unstable and she had obtained a Protection from Abuse (PFA) order against him. Father responded that while he consented to a PFA order, he had never tried to harm Mother or Child. He asserted Mother was attempting to withhold Child from him.

The matter proceeded to a custody trial on December 16, 2020, at which both parties were *pro se* and, due to the Erie County COVID-19 judicial emergency, the parties participated by telephone. Trial Ct. Op., 2/1/20, at 2. At this time, Child was 10 years old. The parties offered statements to the trial court, and the court allowed each party to respond to the other's statements. Similar to her allegations during the conciliation, Mother contended Father was mentally unstable "when [they] split[.]" N.T. at 4. She testified:

> . . . I had to get a PFA on him. He was sending me — my mom [sic] threatening messages . . . .

- 2 -

. . . I have proof from the police officers that he has like four or five harassment citations. [He] destroyed my house, I had to file an insurance claim. I have videos. He posted videos on Facebook, which were obviously public, of him destroying a house and selling all of my stuff. He's slandering my name all the time on Facebook and everybody else.

*Id.* at 4, 7. Mother also contended Father told Child "he was going to kill himself," and that while Father and Child "spoke . . . through Messenger on Facebook, . . . the whole time [Father] was just talking about how bad he was, and how upset he was and what he did. [This] put [Child] into more emotional distress[.]" *Id.* at 4. Mother insisted she offered Father opportunities to see Child after their separation, but Father declined. *Id.* Finally, Mother denied Father and Child had a bond, claiming "they never did anything together," and that Father only cared "about work and money." *Id.* at 5. Mother further averred that Father's intention was not to see Child, but rather to "torment" her. *Id.* at 4.

In contrast, Father denied Mother's claim he "destroyed" her house, asserting instead that Mother's "grandfather . . . or whoever was there" had "destroyed it." N.T. at 6. Father claimed Mother, or unidentified persons associated with her, engaged in other misconduct as well: "They put dirt in my car. They just tormented me the whole time. I called the police multiple times. . . . They stole stuff from me. They still got my important papers[.]" *Id.* at 6-7. Father maintained he "always spent time with" Child, and that they shared a bond. *Id.* at 3, 6. He agreed he "worked a lot," as "money fell

short" when "COVID came," but he insisted he was not "avoiding" Child. ***Id.*** at 6. As stated above, Father claimed Mother had not allowed him to see Child since July 2020. ***Id.*** at 3.

Neither *pro se* party presented any evidence, aside from their testimony as summarized above. The transcript indicates the duration of the hearing was eight minutes. N.T. at 1, 8 (proceedings commenced at 10:08 a.m. and concluded at 10:16 a.m.). The trial court did not make any findings of fact or review the Section 5328(a) statutory custody factors on the record. Instead, at the end of the hearing, the court advised the parties it would issue an order, based on Child's best interests, which the parties would receive in approximately one week. ***Id.*** at 8.

Following the hearing, that same day, the trial court entered the underlying order, granting the parties shared legal custody and Mother primary physical custody. The order awarded unsupervised partial physical custody to Father each Saturday and Sunday from noon to 7:00 p.m.

Mother, now represented by counsel, timely filed a notice of appeal on January 7, 2021. Mother contemporaneously filed a Pa.R.A.P. 1925(a)(2) concise statement of errors, which raised one claim: the trial court erred by failing "to inquire into and/or undergo an analysis of the custody factors set forth in 23 Pa.C.S. § 5328(a)." Mother's Concise Statement of Errors

Complained of on Appeal, 1/7/21.[2] Mother's statement also asserted that because the trial court did not issue an opinion, she could not "readily discern the basis for the [custody order] and can therefore only identify general errors." *Id.*

The trial court subsequently issued an opinion on February 1, 2021. The court acknowledged it had not made findings on the record, due to constraints caused by the COVID-19 judicial emergency. It thus agreed "Mother should be permitted to supplement her appeal, if necessary, upon receipt of the" court's order. Trial Ct. Op. at 2. The court then analyzed each of the Section 5328(a) factors. Pertinently, it accepted Mother's testimony that Father inappropriately told Child he wanted to kill himself and sent Child inappropriate Facebook messages. *See id.* at 5, 9, 11. The court reasoned, however, that this conduct occurred at the time the parties separated, and there was no evidence that Father continued to engage in this behavior. *Id.* at 5, 9, 11. The court also considered "each party's testimony derailed from being about the best interests of the Child to . . . the conflict between" them. *Id.* at 10. The court found both parties "engaged in conduct detrimental to . . . an amicable relationship[,] which [would] serve the best interest of the Child." *Id.* at 10. The court concluded the evidence did not support a need

---

[2] Mother later filed amended certificates of service averring that she served her notice of appeal and concise statement a second time via first class mail on January 11, 2020.

for Father's custody to be supervised, but nevertheless the court "limited Father's . . . partial custody such that the Child will also be in Mother's custody each day of Father's custody." *Id.* at 12. The court reasoned this award would allow Child to reestablish a relationship with Father. *Id.*

Mother presents three claims for our review:

1. The trial court erred when it failed to inquire into and/or undergo an analysis of the custody factors set forth in 23 Pa.C.S. § 5328.

\* \* \*

2. The court erred as a matter of law and abused its discretion in that it did not provide [Mother] with a meaningful opportunity to be heard and failed to inquire as to the sixteen custody factors.

3. The court abused its discretion in awarding Father unsupervised physical custody of [C]hild as the court's conclusions were unreasonable and not supported by the evidence of record.

Mother's Brief at 7.

We are mindful of the standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount. To determine the child's best interest, the trial court must consider the factors" under Section 5328(a). ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). That statute provides:

> **(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16). The Child Custody "Act requires a trial court to address each of [the Section 5328(a)] factors prior to the deadline by which a litigant must file a notice of appeal, and preferably at the time the custody order is issued or shortly thereafter." *See C.B. v. J.B.*, 65 A.3d 946, 948 (Pa. Super. 2013).

We consider Mother's first two claims together. First, she contends the trial court erred by failing to analyze the Section 5328(a) factors in a timely manner. Mother's Brief at 13-16. She points out the court entered its custody

order on December 16, 2020, but did not file an opinion setting forth its findings of fact until February 1, 2021. Mother asserts this delay thus "left [her] with no explanation for the court's rationale," "she could only speculate as to the court's reasons," and this matter should be "remanded for further proceedings." *Id.* at 15-16.

Next, Mother contends the trial court did not provide her with a meaningful opportunity to be heard and failed to inquire as to the Section 5328(a) factors. Mother's Brief at 16. Mother points out the custody trial lasted eight minutes, and the transcript, including the cover and certification pages, is nine pages in length. *Id.* at 18. She asserts the court has a duty to implement procedural safeguards and develop the record when necessary, and failed to do so here. *Id.* at 17-19, *citing* **Lewis v. Lewis**, 406 A.2d 781 (Pa. Super. 1979) (discussed ***infra***). We conclude relief is due, and a remand for further proceedings is appropriate.

As stated above, the trial court acknowledges its obligation "to set forth the reasons for an award of custody on the record," while citing the technological and staffing difficulties presented by the COVID-19 emergency "judicial shutdown." Trial Ct. Op. at 2. Nevertheless, the court determined, after "witnessing the impact on families with custody cases during the initial . . . shutdown in March of 2020[,] that it was in the best interest of children for the Court to proceed with scheduled hearings." *Id.* at 2-3. "[D]ue to the overwhelmed system," however, the court was not able to place its

reasons on the record at the December 16, 2020, hearing or contemporaneously with its order issued later that day. *Id.* at 3. The court agreed that "Mother should be permitted to supplement her appeal, if necessary, upon receipt" of its opinion. *Id.* at 2.

We appreciate the trial court's conducting custody matters through the myriad difficulties presented by the COVID-19 pandemic. We acknowledge the technological and staffing difficulties the court has cited. Under the particular circumstances of this case, however, we agree with Mother that the custody hearing did not provide a meaningful opportunity to be heard, nor establish a sufficient record for a child custody determination. As stated above, the hearing was eight minutes in length, both parties appeared *pro se* and *via* telephone, and no evidence, aside from the parties' litany of cross-allegations of wrongdoing, was presented. While the trial court ably controlled the manner in which the parties testified, the court did not address or inquire into any of the Section 5328(a) factors. The trial court also pointed out the parties' testimony "derailed" into accusations of wrongdoing against the other, losing focus on the best interests of Child. We acknowledge the parties, who appeared *pro se*, were responsible for presenting proper, relevant evidence. *See Thomas v. Thomas*, 194 A.3d 220, 229 (Pa. Super. 2018) ("*pro se* status generally confers no special benefit upon an appellant"). Nevertheless, we agree with Mother's argument that:

> It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the

- 10 -

record itself. After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded.

*See Lewis*, 406 A.2d at 784 (citations omitted); Mother's Brief at 17. In *Lewis*, this Court held:

[T]he lower court should have investigated the conditions of the mother's home and of her mother's ability to care for [the child]. The mother's failure to present such evidence herself is not dispositive so far as concerns the determination of [the child's] best interests; having recognized a significant failure of proof, it was the lower court's duty to take such action as was appropriate to cure the failure, so that the court would be able to learn what the facts were. In this regard, it may be added that the evidence of the father's living conditions was hardly complete or persuasive. The lower court appears to have accepted with little question assertions by the father and his witnesses . . . .

*Lewis*, 406 A.2d at 785. This Court thus remanded for the trial court to "conduct a full hearing into the fitness, circumstances, and home environment of each party[.]" *Id.*

Accordingly, we vacate the December 16, 2020, custody order, and remand to the trial court to conduct a full hearing on Father's custody petition, with proper investigation into the Section 5328(a) custody factors. *See S.W.D.*, 96 A.3d at 400; *C.B.*, 65 A.3d at 948; *V.B.*, 55 A.3d at 1197; *Lewis*, 406 A.2d at 784-85. Due to any ongoing COVID-19 pandemic restrictions, the trial court may conduct the hearing by remote electronic means.

In light of our disposition, we do not reach Mother's third issue — whether the trial court's awarding Father unsupervised custody was unreasonable and lacks support in the record. **See** Mother's Brief at 21.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/21/2021